47 P.(2d) 906

**W. T. RAWLEIGH CO. v. JONES et al.**

No. 3983.

Supreme Court of New Mexico.

July 1, 1935.

Rehearing Denied July 29, 1935.

Hervey, Dow, Hill & Hinkle, of Roswell (Gerrit J. Schutt, of Freeport, Ill. of counsel), for appellant.

Caswell S. Neal and C. M. Neal, both of Carlsbad, and G. U. McCrary, of Artesia, for appellees.

WATSON, Justice.

The W. T. Rawleigh Company, an Illinois corporation, manufactures medicines, cosmetics, etc., and sells them throughout the United States. Its general sales plan is to recruit persons as retail distributors of its products, with whom it enters into written contracts, in which such distributors, itinerant or otherwise, are called "the buyer."

The corporation separately sued four of these buyers for goods sold and delivered f. o. b. Denver, pursuant to such contracts, attaching to each complaint a copy thereof. The suits were consolidated and tried to the court. Judgment went for the defendants on the defense, common to all the answers, that the contract sued upon violated the anti-trust acts of the United States and of this state. Plaintiff appeals.

In the Jones case—and the others will not require separate mention—the appellee relies upon these findings:

"VIII. The Court finds that the written contract herein sued upon was, by the circulars, letters and instructions aforesaid sent to defendant by plaintiff, who accepted said instructions and complied with them, so modified that (a) defendant was required to confine his activities in selling plaintiff's products to Roosevelt County, New Mexico, and (b) was required to sell said products at retail prices fixed by the plaintiff, and (c) was required to devote all of his time to the exclusive sale of plaintiff's products.

"IX. The court further finds that the contract herein sued upon and the construction placed upon it by the parties and the manner of operation under said contract by the parties, had the effect of (a) limiting the trade territory of the defendant Jones to Roosevelt County, New Mexico, and prohibiting any competition in the sale of its products in said County, and (b) of plaintiff fixing the price at which defendant Jones sold its products to the buying public, and (c) requiring the defendant Jones to devote all of his time to the exclusive sale of plaintiff's products.

"X. The Court further finds that the contract herein sued upon is a part of a general scheme and plan upon the part of the plaintiff to (a) restrict the territory of its various agents by counties and districts throughout the United States and the State of New Mexico and prevent the sale of plaintiff's products in competition upon the open market of the State of New Mexico and the United States, and (b) to fix and maintain the retail price at which its said goods are sold to the buying public in the United States and the State of New Mexico, and (c) prevent its dealers from engaging in any occupation or pursuit save and except that of dealing in its products and required them to devote their exclusive time thereto.

"XI. The Court further finds that the practical operation under the contract herein sued upon has the effect in New Mexico of being a contract and combination having for its object and which does operate to restrict trade and commerce and to control the quantity, price and exchange of the articles manufactured by plaintiff and sold in the State of New Mexico, and has the effect of monopolizing the trade and commerce of New Mexico in plaintiff's products.

"XII. The Court further finds that said contract is a part of a general scheme and plan upon the part of plaintiff and others to restrain the trade and commerce of plaintiff's products in inter-state commerce and to monopolize the trade and commerce of the United States, and among the several states, in plaintiff's products."

It is probably to be assumed that "the contract herein sued upon," as the court employed the phrase in findings IX, X, and XI, and "said contract" in finding XII, means the written contract as the court by finding VIII found it to have been modified. At any rate, it is here conceded that the original contract was without vice. It is the contract as modified that is attacked.

■■ Appellant specifies four points relied upon for reversal, but their independence is not strictly observed in argument. Their import is that there is no substantial evidence of a modification of the original contract, and that, if the modification theory fail, there is no case of unlawful contract or combination in restraint of trade.

The evidence of modification of the original contract is merely to the effect that, after the buyers had entered into the contract with the corporation and had been launched upon their careers as distributors, the corporation, by literature furnished, and by letters, circular and personal, brought home to all buyers the corporation's insistence upon standard prices and exclusive territory, and that the buyers, and particularly the defendants, acquiesced in the corporation's plan of controlling these matters, through fear of having their supply of goods cut off.

The theory of modification was obviously put forward by counsel to bring the defense within the principle of Dr. Miles Medical Co. v. John D. Park & Sons Co., 220 U. S. 373; 31 S. Ct. 376, 55 L. Ed. 502, and to take it out of the principle of U. S. v. Colgate & Co., 250 U. S. 300, 39 S. Ct. 465, 468, 63 L. Ed. 992, 7 A. L. R. 443. Ingenious as it is, we are not persuaded of its soundness. We are unable to fit it anywhere into the law of contracts.

As written out and signed by the parties, the contract provides that the buyer "expressly reserves the exclusive right to determine the price, terms and conditions upon which, and the place where, he will sell the merchandise he buys from the seller." It expressly provides that the seller shall have no rights in or power over the merchandise sold or over the buyer's business. The seller then promises to furnish certain "books, bulletins, service, sales or collection letters, and other letters and literature." This, "with the express understanding that it shall impose no legal restrictions whatsoever and that it shall not alter or modify the written conditions of this contract, nor be con-

sidered as orders, directions or restrictions or binding in any way upon the buyer," but to be considered only as "advice and suggestions" which the seller "may follow or not as he may choose." Finally it is provided that the contract "shall not be changed or modified in any way, or by any person, except such change or modification shall be first reduced to writing, signed and agreed to by both parties."

The bona fides of this contract might be doubted. Perhaps it "doth protest too much." The power to terminate it at will practically overrides all rights given to or reserved by the buyer, except the buyer's right, on termination of the relation, to return all goods unsold, at the wholesale prices. But, as stated, it is not urged that the contract is a mere sham to cloak a real understanding and agreement to the exact contrary. It is contended that the parties subsequently modified the contract.

That simply means that failure to object to, or acquiescence in, the "advice and suggestions" contemplated by the contract and expressly stipulated to "impose no legal restrictions whatsoever" and not to "alter or modify the written conditions" of the contract, has in some manner deleted the provision that the buyer "expressly reserves the exclusive right to determine the price, terms and conditions upon which, and the place where, he will sell the merchandise he buys from the seller."

It means that when acquiescence in the advice and suggestions had gone far enough to amount to modification, the buyer would have breached the contract if he had made a sale below the set price or in alien territory; so breached it possibly as to release the corporation from the only promise it has really made, to take the buyer's unsold stock off his hands at wholesale prices.

The right of the corporation to advise and suggest without altering contract rights would seem to imply the right of the buyer to acquiesce in the advice and follow the suggestions without changing the contract.

If the buyers desired to avoid such a modification as this, how should they have proceeded? Should they have made a few sales at cut rates, or have made a few incursions into other territory, to enable them to prove nonacquiescence? Or should they have put up signs, "While I do not exercise, or now care to exercise, the right to cut prices, I claim that right?"

The distinction between the two cases mentioned (the Miles Case and the Colgate Case) is of great importance to this decision. The Supreme Court has pointed it out patiently more than once to counsel and jurists who had not grasped it.

The gist of the statute, the violation of which is relied upon as releasing appel-

lant's debtors, is *making a contract,* or *entering into a combination* in restraint of trade.

The Dr. Miles Medical Company had an elaborate network of contracts designed and employed to bring manufacturer, wholesaler, and retailer into a combination to withhold merchandise from cut-rate dealers. Each dealer had an active part which he contracted to play in the combination.

Colgate & Co., as the indictment was interpreted, merely had an openly announced and everywhere understood business policy. It would not sell to dealers who cut prices. It had the same end in view. It perhaps accomplished it as well. It employed the same ultimate power, the refusal to sell its goods. But it acted independently. It put no dealer under contract obligation to advance its purpose. When first distinguishing the two cases, the court said: " * * * We must conclude that, as interpreted below, the indictment does not charge Colgate & Co. with selling its products to dealers *under agreements which obligated the latter* not to resell except at prices fixed by the company." On the contrary, "in Dr. Miles Medical Company v. Park & Sons Co., supra, the unlawful combination was effected through *contracts* which undertook to prevent dealers from freely exercising the right to sell." U. S. v. Colgate & Co., supra.

Later the distinction was thus brought out. In the Miles Case "the effort was to destroy the dealers' independent discretion through *restrictive agreements.*" The Colgate, decision was "only recognition of the manufacturer's undoubted right to specify resale prices and refuse to deal with any one who failed to maintain the same." And, "in the first, the manufacturer but exercises his independent discretion concerning his customers and there is no contract or combination which imposes any limitation on the purchaser. In the second, the parties are combined through agreements designed ·to take away dealers' control of their own affairs and thereby destroy competition and restrain the free and natural flow of trade amongst the states." U. S. v. A. Schrader's Son, Inc., 252 U. S. 85, 40 S. Ct. 251, 253, 64 L. Ed. 471.

So we see how vital it is for appellees to maintain their theory of modification. It is not enough to show that appellant has schemed and labored to effect restraint of trade. It must be shown that it has contracted or combined with others to that end. If the combination was not effected by the contract as signed, when did it come into existence? When did any of the appellees lose his reserved right to sell his own goods at such prices and places as he pleased? Appellees had the right to acquiesce or not to acquiesce in appellant's advice and suggestions. Neither course

could change the contract or the relation. Appellant had the right to refuse to replenish the stocks of the appellees. A threat to do so might coerce; it could not modify the contract; it could not amount to entering into a combination.

We do not overlook the principle of later decisions that the combination may be entered into tacitly as well as formally and expressly. Nor do we decide, for we are not impressed, that the framing and execution of so strange and strained an agreement as this will be proof conclusive against an actual combination. We do hold that, so long as we take this to have been the real contract, we cannot predicate a combination upon some anomalous theory of subsequent modification.

■ Finding IX might mean that the written contract was not the real agreement; that it was deemed wise to have it available as a defense for all parties against a charge of statute violation; and that the actual understanding and undertaking was the exact contrary.

Of this there is no evidence, as we understand the record. The burden of proof was on appellees, as their defense was affirmative.

No one claims that there was any side or nullifying understanding. All that is claimed is a yielding of the original contract rights to the fear that appellant would exercise its right to terminate the contract, that is refuse to sell. That in itself affirms that there was no combination. Appellees maintained prices and territorial restrictions; not because of obligation voluntarily assumed, but from fear of consequences if they should not. Appellant acted independently in pursuing and enforcing its policy. Appellees acquiesced, as Colgate's customers probably did, not because combined, but because their own interests seemed to lie in acquiescing.

■ For purposes of this case, we shall assume that, if a contract or combination in restraint of trade had here been shown, the legal result would have been to relieve appellees from the duty to pay for the goods sold and delivered to them, despite the fact that the case as made by appellant exhibits no illegality, and that appellees have been put to it to plead their own wrong. Immunity of debtors is not the law's object however. If and when it follows, it is as a somewhat regretable result of the law's policy of protecting freedom of trade. Here the defense has a technical standing. Where the public interest is but indirectly, incidentally, and almost imperceptibly involved, we do not seek a strained or unsound construction, to interfere with the course of justice as between parties who, if in the wrong at all, are in pari delicto.

Unable to sustain the affirmative defense which prevailed below, it seems necessary to reverse the judgment. The

cause will be remanded with a direction to vacate the judgment and findings, and to make new findings touching the indebtedness of each appellee to the appellant, and to render the appropriate judgment thereon.

It is so ordered.

SADLER, C. J., and HUDSPETH and BICKLEY, JJ., concur.

ZINN, J., did not participate.