[No. 2292, April 9, 1919.]
## STATE v. GURLEY.

### SYLLABUS BY THE COURT.

1.   Sections 1685 and 1686, Code 1915, relative to monopo-
lies, construed. **Held**, that in order for the contract to be

violative of the statute it must have been one having for its object, or which would operate to restrict trade or commerce, or control the quantity, price, or exchange of the article in question.                                                      P. 237

2.    Indictment under Code 1915, §§ 1685, 1686, relating to monopolies and making a violation thereof a misdemeanor, alleging a contract whereby another would obtain selling agency for all broom corn owned or produced by farmers in vicinity and would sell it to defendant at $150 per ton, when it was then worth $350 per ton, etc., did not show a violation of statute.                                                      P. 237

Appeal from District Court, Curry County; Richardson, Judge.

Arthur Gurley was indicted for unlawful and feloniously entering into a contract to restrict trade and commerce, his demurrer to the indictment was sustained, and the State appeals.    Affirmed.

## STATEMENT OF FACTS.

This is an appeal from the district court of the Fifth judicial district within and for the county of Curry. On the 15th day of August, 1918, the grand jury of said county returned an indictment against the appellee, Arthur Gurley, charging him as follows:

"That Arthur Gurley, late of the county of Curry, in the state of New Mexico, on the 23d day of February, in the year 1918, at the county of Curry, in the said state of New Mexico, willfully, unlawfully, and feloniously did enter into a contract and combination with one George W. Ryle, then and there being, a contract and combination having for its object to restrict trade and commerce and control the price and exchange of all of the broom corn produced from the soil and owned by the farmers in the vicinity of Melrose in Curry county, state of New Mexico, said unlawful contract and combination then and there being that the said George W. Ryle would obtain and secure the agency for and the possession of and the authority to control and sell all of the broom corn then owned by the farmers and produced from the soil in the year 1917 in Curry county, in the state of New Mexico, in the vicinity of Melrose, and that he would sell the said broom corn to the said Arthur Gurley for $150 per ton, the said contract and combination proposed by the said Arthur Gurley and entered into by the said Arthur Gurley and the said George W. Ryle then and there being that, in consideration for the services of the said George W. Ryle, the said Arthur Gurley would give to the said George W. Ryle, for the individual broom corn

produced from the soil and owned by the said George W. Ryle, the sum of $350 per ton, and that in addition thereto, for the services of the said George W. Ryle in securing, possessing, controlling, and selling all of the broom corn produced from the soil and then owned by the farmers of Curry county, N. M., in the vicinity of Melrose, for the year 1917, he would give to the said George W. Ryle the sum of $1,000 and a new J. I. Case automobile of the value of $1,550; and in pursuance to said unlawful agreement the said Arthur Gurley did then and there pay to the said George W. Ryle the sum of $1,000; and whereas, in truth and in fact, the said broom corn owned and produced by the farmers of Curry county, state of New Mexico, in the vicinity of Melrose, for the year 1917, was worth the sum of $300 per ton.

"And so the grand jurors aforesaid, upon their oaths aforesaid, do say that the said Arthur Gurley, with the said George W. Ryle, a contract and combination having for its object to restrict trade and commerce and control the price of broom corn, the same being then and there a product of the soil, unlawfully, willfully, and feloniously did enter into.

"And the grand jurors aforesaid, upon their oaths aforesaid, do further present: That the said Arthur Gurley, late of the county of Curry, in the state of New Mexico, on the 23d day of February, in the year 1918, at the county of Curry, in said state of New Mexico, with the attempt to monopolize a part of the trade and commerce of the county of Curry, state of New Mexico, the said Arthur Gurley with the said George W. Ryle unlawfully, willfully, and feloniously did combine and conspire said attempt to monopolize, and said combination and conspiracy then and there being that the said George W. Ryle would secure the agency for, and the possession of, and the authority to control and sell, all of the broom corn produced from the soil and owned by the farmers of the county of Curry, state of New Mexico, in the vicinity of Melrose, in the year 1917, and that he would sell the said broom corn to the said Arthur Gurley for the sum of $150 per ton, and that in consideration for the services of the said George W. Ryle the said Arthur Gurley would give to the said George W. Ryle, for all the broom corn individually owned and produced from the soil by the said George W. Ryle, the sum of $350 per ton, and that in further consideration of the said services of the said George W. Ryle that he would give to the said George W. Ryle the sum of $1,000 and a new J. I. Case automobile of the value of $1,550, and in pursuance to the said unlawful agreement the said Arthur Gurley did then and there pay to the said George W. Ryle the sum of $1,000, and whereas, in truth and in fact, the said broom corn owned by the farmers and produced from the soil in the county of Curry, in the state of New Mexico, in the vicinity of Melrose as aforesaid, was worth the sum of $300 per. ton.

"And the grand jurors aforesaid, upon their oaths aforesaid, do say: That the said Arthur Gurley, with the said George W. Ryle, to monopolize a part of the trade and commerce of the county of Curry and state of New Mexico, unlawfully, willfully, and feloniously did combine and conspire,

contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of New Mexico."

The indictment was returned under the provisions of sections 1685 and 1686, Code 1915. To this indictment the defendant demurred upon the ground, among other things, that the indictment was insufficient and does not as a matter of law constitute the crime of unlawfully and feloniously entering into a contract to restrict trade and commerce. The demurrer was sustained, and it is from this order sustaining the demurrer that the state has appealed.

O. O. ASKREN, of Santa Fe, and SAM BRATTON and W. A. HAVENER, both of Clovis, for appellant.

H.. L. PATTON, Atty. Gen., and C. A. HATCH, Asst. Atty. Gen.; for the State.

OPINION OF THE COURT.

RAYNOLDS, J. (after stating the facts as above). Sections 1685 and 1686, Code 1915, under which the foregoing indictment was returned, are as follows:

1685. **Restraints of Trade.** "Every contract or combination between individuals, associations or corporations, having for its object or which shall operate to restrict trade or commerce or control the quantity, price ·or exchange of any article of manufacture or product of the soil or mine, is hereby declared to be illegal.

"Every person, whether as individual or agent or officer or stockholder of any corporation or association, who. shall make any such contract or engage in any such combination, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding one thousand dollars nor less than one hundred dollars, and by imprisonment at hard labor not exceeding one year, or until such fine has been paid."

1686. **Monopolies.** "Every person who shall monopolize or attempt to monopolize, or combine or conspire with any other person or persons to monopolize any part of the trade or commerce of this state, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding one thousand dollars or by imprisonment not exceeding one year, or by both said punishments in the discretion of the court."

[1] It is contended by the state that the contract set forth in the indictment was in violation of the sections of the statute quoted, and that therefore the court was in error in sustaining the demurrer. In order for the contract to be violative of the statute it must have been one having for its object, or which would operate to restrict trade or commerce, or control the quantity, price, or exchange of the broom corn in question. In 19 R. C. L. p. 115, it is said:

"It is generally agreed that if the necessary effect of the contract or combination is to stifle or directly or necessarily to restrict free competition or lessen it to an unreasonable extent, such contract or combination is under the ban of the law, whatever may have been the intention of the parties."

This we believe to be generally accepted as a correct statement of the law. In the case of State v. Duluth Board of Trade, 107 Minn. 506, 121 N. W. 395, 23 L. R. A. (N. S.) 1260, will be found a very full discussion of the subject of monopolies and combinations in restraint of trade. The court in that case quotes with approval from the case of Whitwell v. Continental Tobacco Co., 125 Fed. 454, 60 C. C. A. 290, 64 L. R. A. 689.

"The act * * * must have a reasonable construction, or else there would scarcely be an agreement or contract among business men that could not be said to have, indirectly or remotely, some bearing upon interstate commerce, and possibly to restrain it."

[2] With the foregoing statements of the law, we will proceed to a consideration of the contract in question, and determine whether it is violative of the sections of our statute quoted. That the contract in question was an obnoxious one by which it was proposed to perpetrate a fraud upon the farmers in the vicinity of Melrose is beyond question, and it might be that, had an attempt been made to carry out the contract, the appellant and Ryle could have been prosecuted under section 1553, Code 1915, for false representation. With this question, however, we are not concerned here.

The only question to be decided in this case is whether such a contract as is set out in the indictment violates the

statute against restraint of trade and monopolies. We have investigated the subject thoroughly, and have been unable to find a statute exactly like our own, but our statute is similar to the federal anti-trust law (Sherman Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. § 8820 et seq.]) and numerous other so-called anti-trust laws of the various states. Contracts alleged to have been in restraint of trade, and which tended to monopolize, have been the subject of much litigation. The courts have applied various tests to determine whether such contracts were within the inhibition of the statute. They have sought to ascertain whether such contracts were in total or partial restraint of trade, holding those in partial restraint to be valid and those in total restraint invalid. "Restraint of trade," as the phrase is used in these decisions, sometimes is applied to the time for which the contracts were to run, and sometimes is applied to the territory throughout which the contracts were intended to operate.

The Supreme Court of the United States, in the case of Standard Oil Co. v. United States, 221 U. S. 1, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. (N. S.) 834, Am. Cas. 1912D, 734, finally determined that contracts in restraint of trade and contracts which intended to monopolize to be within the inhibition of the statute must be in unreasonable restraint of trade. This test is unsatisfactory. "Obviously, however, so broad and general a test is incapable of very close application; each case that arises being left to be decided upon its own merits and upon the particular circumstances developed." Cooke on Combinations, par. 133.

Applying these principles to the case at hand, we are of the opinion that such a contract as is set out in the indictment is not one forbidden by the statute in question. The rule of reason means to unreasonably restrict or restrain trade. This contract does not unreasonably restrict trade or monopolize, when by its very terms it allows and permits the contracting parties to compete with each other, and it does not prohibit others from

competing with either of the contracting parties, or both of them. Nor does it compel any one to contract with or sell to or purchase from them at any fixed price or otherwise. Gurley sought to purchase broom corn through Ryle, probably because he could purchase it cheaper that way. He agreed to pay Ryle for his services. It is the fraudulent manner in which the contract was proposed to be carried out which constitutes the crime, and not the making of such a contract, nor its effect, for such contracts of agency are legal. Ryle proposed to obtain possession and the right to sell. The terms on which he agreed with the farmers to sell their product are not set out. If he had obtained the best market price for his clients there would have been nothing illegal or morally wrong, but it is apparent that he could not have done this, unless he intended to lose money by his contract, as he could not obtain for them the market price, having already agreed with Gurley to sell to Gurley at a price below the market price. The indictment, in our opinion, charges that Gurley and Ryle entered into a contract to cheat and defraud the farmers in the vicinity of Melrose, and it does not charge making a contract which had for its object to restrict trade and commerce, because, except for the mode in which it was to be carried out, the contract was legal and valid.

It does not allege in the contract set out in the indictment that Ryle intended to use improper methods to get the agency to sell the broom corn. To hold such a contract as this illegal and unlawful because of the allegations in the indictment as to what defendant and Ryle intended to do thereunder would be assuming that all such contracts in which an agent may be able to or intended to defraud and betray his principal illegal and invalid. These men, or either of them, if the contract had been carried out as alleged was intended in the indictment, could have been indicted for obtaining property by false pretenses, but this court cannot assume that a contract like the one set out, which was a legitimate contract to procure an agency, would be carried out as alleged in the indictment, or that, because such a con-

tract could be used as a method to defraud, that in itself it was one in restrain of trade. Especially is it true where, as before stated, the contract itself did not unreasonably restrict trade or commerce or monopolize. The theory of the state evidently is that, because Ryle agreed to secure the agency from the farmers for the sale of their broom corn with the intent to sell to appellant at a stipulated price, who at the time was acting also as agent for appellant, the statute in question is violated. We cannot agree with this contention. While the contract in question shocks the moral sense, it does not fall within the inhibition of the statute against monopolies. We think the court properly sustained the demurrer.

While there are other questions raised in the case, it is not necessary to consider them as the above is controlling.

For the reasons stated, the judgment will be affirmed; and it is so ordered.

PARKER, C. J., and ROBERTS, J., concur.