683 P.2d 50

**STATE of New Mexico,**
**Plaintiff-Appellant,**

v.

**RAY BELL OIL COMPANY, INC., a corporation, Defendant-Appellee.**

**No. 6045.**

Court of Appeals of New Mexico.

May 24, 1983.

Certiorari Quashed June 20, 1984.

Paul Bardacke, Atty. Gen., William Lazar, Stephen Westheimer, Asst. Attys. Gen., Santa Fe, for plaintiff-appellant.

Charles W. Daniels, Freedman, Boyd & Daniels, P.A., Albuquerque, for defendant-appellee.

## OPINION

WOOD, Judge.

NMSA 1978, § 57–1–1 (Cum.Supp.1982), part of our Antitrust Act, pertains to restraint of trade. Prohibited restraints of trade may be dealt with in civil or criminal proceedings. NMSA 1978, §§ 57–1–3 and 57–1–6 (Cum.Supp.1982). Defendant was charged with criminal restraint of trade. The charge was in the alternative, that defendant violated either Paragraph A or Paragraph B of § 57–1–1. The trial court granted defendant's motion to dismiss the Paragraph A charge; the State appealed. The appeal is concerned with the meaning of Paragraphs A and B.

The motion to dismiss was granted after the State "agreed that either alternative charge was based on an alleged conspiracy among competitors to fix the retail price of gasoline." The trial court concluded: "Where an allegation of fixing prices is the complained of activity * * * the charge must be brought under Section 57–1–1(B) because that subsection specifically refers to conspiracies that control prices whereas Section 57–1–1(A) refers only to conspiracies in restraint of trade." The trial court misread the statute; we reverse.

A comparison of federal action with New Mexico action aids in understanding the meaning of the New Mexico statute. The Sherman Antitrust Act was enacted in 1890. Section 1 of that Act, *see* 15 U.S. C.A. § 1 (Supp.1982), reads:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

New Mexico enacted a restraint of trade statute by Laws 1891, ch. 10, § 1. It is compiled as NMSA 1978, § 57–1–1 (orig. pamp.), and reads:

Every contract or combination between individuals, associations or corporations, having for its object or which shall operate to restrict trade or commerce or control the quantity, price or exchange of any article of manufacture or product of the soil or mine, is hereby declared to be illegal.

This 1891 statute did not track the federal statute.

*United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 was decided in 1978. *Gypsum* held:

(a) 15 U.S.C.A. § 1 is not a strict liability statute.

(b) "[I]ntent is a necessary element" of a federal criminal antitrust violation; "criminal offenses defined by the Sherman Act should be construed as including intent as an element." (*Id.* 438 U.S. at 443, 98 S.Ct. at 2876.)

By Laws 1979, ch. 374, § 1, § 57–1–1 was amended to its present wording, which is:

A. Every contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state, is hereby declared to be unlawful.

B. Every contract, agreement, combination or conspiracy which controls the quantity, price or exchange of any article of manufacture, product of the soil or mine or any goods or services in restraint of trade is hereby declared to be unlawful.

NMSA 1978, § 57–1–15 (Cum.Supp.1982), also enacted in 1979, reads:

Unless otherwise provided in the Antitrust Act [57–1–1 to 57–1–15 NMSA 1978], the Antitrust Act shall be construed in harmony with judicial interpretations of the federal antitrust laws. This construction shall be made to achieve uniform application of the state and federal laws prohibiting restraints of trade and monopolistic practices.

The similarity between 15 U.S.C.A. § 1 and § 57–1–1(A) is obvious. Here the State claims a conspiracy. Both statutes require a conspiracy in restraint of trade.

■ We look to federal decisions to determine the meaning of "restraint of trade". Section 57–1–15. A conspiracy to fix prices is a per se restraint of trade. This means that the reasonableness of the prices is not an issue. The "rule of reason" does not apply to per se restraints of trade. *Compare Elephant Butte Alfalfa Ass'n. v. Rouault,* 33 N.M. 136, 262 P. 185 (1926).

*United States v. Trenton Potteries,* 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700 (1927), explains:

The aim and result of every price-fixing agreement, if effective, is the elimination of one form of competition. The power to fix prices, whether reasonably exercised or not, involves power to control the market and to fix arbitrary and unreasonable prices. The reasonable price fixed today may through economic and business changes become the unreasonable price of tomorrow. Once established, it may be maintained unchanged because of the absence of competition secured by the agreement for a price reasonable when fixed. Agreements which create such potential power may well be held to be in themselves unreasonable or unlawful restraints, without the necessity of minute inquiry whether a particular price is reasonable or unreasonable as fixed and without placing on the government in enforcing the Sherman Law the burden of ascertaining from day to day whether it has become unreasonable through the mere variation of economic conditions. [*Id.* 273 U.S. at 397, 47 S.Ct. at 379.]

\* \* \* \* \* \*

The charge of the trial court \* \* \* fairly submitted to the jury the question whether a price-fixing agreement \* \* \* was entered into by the respondents. Whether the prices actually agreed upon were reasonable or unreasonable was immaterial in the circumstances. \* \* \* [*Id.* 273 U.S. at 401, 47 S.Ct. at 381.]

*United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 218, 60 S.Ct. 811, 842, 84 L.Ed. 1129 (1940), states:

[T]his Court has consistently and without deviation adhered to the principle that price-fixing agreements are unlawful *per se* under the Sherman Act and that no showing of so-called competitive abuses or evils which those agreements were designed to eliminate or alleviate may be interposed as a defense.

█ Price-fixing agreements, without more, are unreasonable restraints of trade. A crime occurs under 15 U.S.C.A. § 1, and § 57–1–1(A), if there is a conspiracy to fix prices with the requisite intent. The anti-competitive effect—the price fixing—does not have to occur. *Gypsum* explains:

> Our question instead is whether a criminal violation of the antitrust laws requires, in addition to proof of anticompetitive effects, a demonstration that the disputed conduct was undertaken with the "conscious object" of producing such effects, or whether it is sufficient that the conduct is shown to have been undertaken with knowledge that the proscribed effects would most likely follow. While the difference between these formulations is a narrow one, see ALI, Model Penal Code, Comment on § 2.02, p. 125 (Tent. Draft No. 4, 1955), we conclude that action undertaken with knowledge of its probable consequences and having the requisite anticompetitive effects can be a sufficient predicate for a finding of criminal liability under the antitrust laws.[21] [*Id.* 438 U.S. at 444, 98 S.Ct. at 2877.]

Footnote 21 to *Gypsum* states:

> In so holding, we do not mean to suggest that conduct undertaken with the purpose of producing anticompetitive effects would not also support criminal liability, even if such effects did not come to pass. Cf. *United States v. Griffith,* 334 U.S. 100, 105 [68 S.Ct. 941, 944, 92 L.Ed. 1236] (1948). We hold only that this elevated standard of intent need not be established in cases where anticompetitive effects have been demonstrated; instead, proof that the defendant's conduct was undertaken with knowledge of its probable consequences will satisfy the Government's burden. [*Id.* 438 U.S. at 444, 98 S.Ct. at 2877.]

As to the treatment of intent where anticompetitive effects have been demonstrated, Note, **Criminal Intent and the Sherman Act: The Label Per Se Can't Take Gypsum Away,** 32 Hastings L.J. 499 (1980).

It being stipulated that the criminal charge was based on an alleged conspiracy among competitors to fix the retail price of gasoline, the charge was properly under § 57–1–1(A) unless § 57–1–1(B) makes § 57–1–1(A) inapplicable.

Section 57–1–1(B) has no counterpart in the federal statute. It is similar to § 57–1–1(A) in that it applies to a conspiracy in restraint of trade. However, Paragraph B has an additional requirement, a consequence is required—a "conspiracy which controls the quantity, price or exchange of any article of manufacture, product of the soil or mine or any goods or services[.]" This language comes from the New Mexico statute of 1891.

Inasmuch as "control" is not required to violate § 57–1–1(A), *see United States v. Socony-Vacuum Oil Co.,* why was the "control" language carried forward into the amendment enacted in 1979? *State v. Gurley,* 25 N.M. 233, 180 P. 288 (1919), provides the answer. *Gurley,* discussing our 1891 Act, states:

> In order for the contract to be violative of the statute it must have been one having for its object, or which would operate to restrict trade or commerce, or control the quantity, price, or exchange of the broom corn in question. In 19 R.C.L. p. 115, it is said:
>
> > "It is generally agreed that if the necessary effect of the contract or combination is to stifle or directly or necessarily to restrict free competition or lessen it to an unreasonable extent, such contract or combination is under the ban of the law, whatever may have been the intention of the parties."
>
> This we believe to be generally accepted as a correct statement of the law. [*Id.* 25 N.M. at 237, 180 P. 288.]

█ Having followed *Gypsum,* and its requirement of intent, in enacting § 57–1–1(A), the Legislature enacted § 57–1–1(B) as a no intent crime. *Compare State v. Barber,* 91 N.M. 764, 581 P.2d 27 (Ct.App. 1978). Where the conspiracy to fix the price of gasoline results in actual control of the price of gasoline, § 57–1–1(B) is violat-

ed "whatever may have been the intention of the parties."

Summarizing:

(a) Section 57–1–1(A) is violated by a conspiracy to fix prices with the requisite intent.

(b) Section 57–1–1(B) is violated by a conspiracy to fix prices if the result is control of the price. No intent is required.

■ The trial court erred in dismissing the charge under § 57–1–1(A), and in ruling that a conspiracy *to* control must be prosecuted under § 57–1–1(B). The charges, being in the alternative, were proper in that one crime was charged as having been committed in two ways. *See State v. Ortiz,* 90 N.M. 319, 563 P.2d 113 (Ct.App.1977); *State v. Gurule,* 90 N.M. 87, 559 P.2d 1214 (Ct.App.1977). Trial should proceed under the alternative charges. If the State's proof is insufficient to show that the alleged conspiracy resulted in control of gasoline prices, the charge under § 57–1–1(B) should not be submitted to the jury.

The order dismissing the charge under § 57–1–1(A) is reversed.

IT IS SO ORDERED.

DONNELLY, J., concurs.

LOPEZ, J., dissents.

LOPEZ, Judge (dissenting).

I respectfully dissent.

The majority opinion concludes its decision by stating, "The trial court erred in dismissing the charge under § 57–1–1(A), and in ruling that a conspiracy *to* control must be prosecuted under § 57–1–1(B). The charges, being in the alternative, were proper in that one crime was charged as having been committed in two ways. * * * Trial should proceed under the alternative charges. If the State's proof is insufficient to show that the alleged conspiracy resulted in control of gasoline prices, the charge under § 57–1–1(B) should not be submitted to the jury."

I would agree with much of the majority holding if I accepted the premise that the briefs, facts, statutes, the record on appeal and all legal authorities can reasonably be read and interpreted only as they do so. But I do not agree with that premise.

Our duty is to find the interpretation which can most fairly be said to be imbedded in the statutes in question, in the sense of being most harmonious with the statutory scheme and with the general purposes that the New Mexico Legislature manifested.

My conclusion is that there are other more reasonable constructions and interpretations of the briefs, facts, the record on appeal, the statutes, and the legal authorities applicable to the case at bar.

The sole issue is whether the trial court erred in concluding that price fixing charges must be brought under § 57–1–1(B) instead of § 57–1–1(A) because subsection B specifically refers to conspiracies that control prices wherein § 57–1–1(A) refers only to conspiracies and restraint of trade.

**FACTS**

This case involves a criminal prosecution under the New Mexico Antitrust Act, §§ 57–1–1 through 57–1–19 (1982 Cum. Supp.). The indictment brought by a Dona Ana grand jury on May 13, 1982 charged that:

Between the dates of July 1, 1979 and March 12, 1982, in Dona Ana County, State of New Mexico, the above-named defendants, J.B. Ritter Distributing Company, W.K. "Ajax" Simpson, Ray Bell Oil Company, Inc., and Harry M. Bush, Jr., intentionally contracted, agreed, combined, or conspired, one with another or with others, in restraint of trade or commerce, to fix stabilize, maintain, or control the price of gasoline sold at retail gasoline stations in Dona Ana County, State of New Mexico, contrary to Sections 57–1–1, 6 NMSA 1978 (1981 Supp.), a fourth degree felony; or, in the alternative, the above-named defendants intentionally formed a contract, agreement, combination, or conspiracy, one with another or with others, which controlled the quantity, price or exchange of

any article or manufacture, product of the soil or mine or any goods or services in restraint of trade; namely gasoline sold at retail gasoline stations in Dona Ana County, State of New Mexico, contrary to Sections 57-1-1, 6 NMSA 1978 (1981 Supp.), a fourth degree felony.

Prior to the proceedings giving rise to this appeal, three of the four defendants, Harry M. Bush, Jr., J.B. Ritter Distributing Co. and W.K. "Ajax" Simpson, entered into plea agreements. The court accepted their pleas of no contest and a separate judgment and sentence was entered as to each of the three defendants.

On November 9, 1982, the morning that the trial of the defendant was to begin, the defendant moved to dismiss the charge in the indictment brought under § 57-1-1(A).

The hearing concluded with the parties working out a stipulation to present the issue properly to this court:

The Court: And for the reason, and I believe that this type of situation, which you have indicated is a price fixing case, is controlled by B.

Smith: All right, Your Honor, we would stipulate that the State, as stated in argument, and as contained in the language of both alternatives, would proceed if this case went to trial today on prosecution for competitors in the retail gasoline business in Las Cruces, including the defendant, having agreed to fix the price of retail gas.

Daniels: Disagreeing that that occurred, we agree that that is the State's theory and that's all that this case is about, whether or not that existed.

The Court: All right, it will be so stipulated.

The findings and conclusions and the order of the trial court follows:

THE COURT FINDS That:

1. On May 13, 1982, the defendant was charged by grand jury indictment with a one count violation of the New Mexico Antitrust Act, Sections 57-1-1 and 57-1-6, N.M.S.A.1978, as amended.

2. The indictment charged a violation in the alternative, one alternative being based on the language of Section 57-1-1(A); that the defendant " * * * intentionally contracted, agreed, combined or conspired * * * in restraint of trade or commerce, to fix, stabilize, maintain or control the price of gasoline * * * ".

3. The alternative charge in the indictment alleged that the defendant " * * * intentionally formed a contract, agreement, combination or conspiracy * * * which controlled the quantity, price or exchange of any article or manufacture * * * in restraint of trade * * * ". 57-1-1(B).

4. For the purpose of this motion and hearing, the defendant and the State stipulated and agreed that either alternative charge was based on an alleged conspiracy among competitors to fix the retail price of gasoline.

CONCLUSIONS OF LAW:

1. Where an allegation of fixing prices is the complained of activity under the New Mexico Antitrust Act, the charge must be brought under Section 57-1-1(B) because that subsection specifically refers to conspiracies that control prices whereas Section 57-1-1(A) refers only to conspiracies in restraint of trade.

2. Under the facts alleged by the State, Section 57-1-1(B) is the more specific statute.

IT IS THE ORDER OF THE COURT, therefore that:

1. The alternative charge of the indictment against the defendant Ray Bell Oil Company, Inc. based on Section 57-1-1(A) is hereby dismissed.

2. The trial in this matter scheduled to begin on November 9, 1982, is hereby continued.

3. The State is given leave to appeal the dismissal of its alternative charge on the grounds that the findings, conclusions and order entered herein involve a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal will materially advance the ultimate ter-

mination of the litigation, to which the defendant has no objection.

I quote the present § 57–1–1:

A. Every contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state, is hereby declared to be unlawful.

B. Every contract, agreement, combination or conspiracy which controls the quantity, price or exchange of any article of manufacture, product of the soil or mine or any goods or services in restraint of trade is hereby declared to be unlawful.

Section 57–1–1, before it was amended in 1979, provided:

Every contract or combination between individuals, associations or corporations, having for its object or which shall operate to restrict trade or commerce or control the quantity, price or exchange of any article of manufacture or product of the soil or mine, is hereby declared to be illegal.

Every person, whether as individual or agent or officer or stockholder of any corporation or association, who shall make any such contract or engage in any such combination, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding one thousand dollars [ ($1,000) ] not less than one hundred dollars [ ($100) ], and by imprisonment at hard labor not exceeding one year, or until such fine has been paid.

## PROPRIETY OF THE TRIAL COURT'S ORDER OF DISMISSAL

The State challenges the order of the court contending: 1. That the effect of the ruling is to legalize price fixing in New Mexico if it can be proven at trial that the fix did not result in price control; 2. That 57–1–1(A) and (B) do not describe the same offense, rather the proof for each subsection is different; and 3. That the trial court erred in applying the specific-general rule of statutory construction.

The defendant argues that the order was correct and that the trial court properly applied the specific-general rule of statutory construction.

This appeal requires the interpretation of § 57–1–1(A) & (B). In doing so it is necessary for me to review the Federal Sherman Act since the New Mexico Legislature has followed it and spoken of it in NMSA 1978, § 57–1–15 (Cum.Supp.1982). Section 57–1–15 provides:

Unless otherwise provided in the Antitrust Act [57–1–1 to 57–1–15 NMSA 1978], the Antitrust Act shall be construed in harmony with judicial interpretations of the federal antitrust laws. This construction shall be made to achieve uniform application of the state and federal laws prohibiting restraints of trade and monopolistic practices.

Section 57–1–1(A) of the New Mexico Antitrust Act, is substantially similar to section 1 of the Sherman Act:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal. * * *

15 U.S.C.A. § 1 (Supp.1983).

The argument of the State is that § 57–1–1(A) prohibits price fixing and that since subsection (B) prohibits price control the offenses are different and the charge of violating subsection (A) should not be dismissed. The state also contends that price fixing is a per se violation. I, and the defendant, have no quarrel with the State's contention that price fixing is a per se violation of the New Mexico Antitrust Act.

Per se violations are those in which certain categories of clearly anticompetitive conduct, such as price fixing, are involved. In per se cases the government does not have to prove that the activity constituted a restraint of trade under the particular circumstances. In cases that do not involve conduct that is a per se violation, a "rule of reason" analysis is used to determine whether the conduct constitutes an "unreasonable" restraint of trade. *United States v. United States Gypsum Co.*, 438 U.S.

422, 985 S.Ct. 2864, 2869, 57 L.Ed.2d 854 (1978). Price fixing is clearly unlawful under either law, no matter what justification might be offered in defense of the price fixing.

I conclude that price fixing or price control are per se violations.

The Supreme Court of the United States in *United States v. United States Gypsum Co.*, supra, held that an effect on prices even to raise, fix, maintain or stabilize them would not support a criminal conviction under the Sherman Act without more. The court held specifically that the Sherman Act does not mandate a regime of strict liability criminal offenses and that a defendant's intent is an element of a criminal antitrust offense which must be established by evidence and inferenced drawn therefrom and cannot be taken from the trier of fact through reliance on a legal presumption of wrongful intent from proof of an effect on prices. *Gypsum* was part of a series of recent Supreme Court decisions rejecting a strict liability approach to antitrust litigation. *See Broadcast Music, Inc. v. Columbia Broadcasting*, 441 U.S. 1, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1979); *Continental TV, Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977), overruling *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). *See generally*, **Criminal Intent and the Sherman Act: The Label Per Se Can't Take Gypsum Away**, 32 Hastings L.J. 499 (1980).

The most important difference is found in the basic definitions of the offenses set forth in § 57–1–1. The section is divided into two subsections defining unlawful restraints of trade. Subsection A of the statute is, in essence, a restatement of the sweeping provisions of the Sherman Act, dealing generally with any combinations or conspiracies in restraint of trade.

Subsection B, however, sets forth a specific and discrete category of unlawful restraints of trade of the kind considered to be per se violations of the federal law. It provides in relevant part that "every contract, agreement, combination, or conspir-

acy which controls the quantity, price or exchange of any" product is unlawful. That language appears nowhere in the Sherman Act or any other federal antitrust act. It is quite clearly the statutory definition of certain kinds of conduct specifically prohibited, without requirement of any judicial interpretation of the very general language of subsection A. What the New Mexico legislature has done is to statutorily define certain per se restraints of trade, leaving subsection A to deal with other kinds of restraints of trade. Contrary to the position of the State, § 57–1–15 does not require this court to abdicate the use of New Mexico law to interpret either subsection A or B. *See Q–T Markets, Inc. v. Fleming Companies, Inc.*, 394 F.Supp. 1102 (D.Colo.1975).

An understanding of subsection B is enhanced by a consideration of its history in New Mexico law. The current statute was enacted in 1979, replacing a former statute providing that every contract or combination "having for its object or which shall operate to restrict trade or commerce or control the quantity, price or exchange of any" product is unlawful.

There are two particular differences between the old statute and the new statute which are of importance in construing subsection B. To begin with, the old law did not require the agreement to be successful in achieving its goal. As clearly set forth in the old New Mexico statute, the restraint of trade need not be affected for a violation to occur because § 57–1–1 prohibits a contract or combination which has for its object the restriction of trade or commerce. **J. Wechsler, New Mexico Restraint of Trade Statutes-A Legislative Proposal**, 9 N.M.L.Rev. 1, 6 (1978–79); *see W.T. Rawleigh Co. v. Jones*, 39 N.M. 381, 47 P.2d 906 (1935).

The new statute has eliminated the "for its object" language and instead requires that the agreement "control" prices.

So the question before this court is whether controlling prices is the same as fixing prices. Subsection B specifically relates to conspiracies controlling prices, and

I hold that it should preempt situations alleging price fixing prosecutions pursuant to subsection A.

It is a well established principle of statutory construction in New Mexico that where one statute deals with a subject in general terms and another deals with a part of the same subject in a more specific way, the more specific statute will be considered an exception to the general statute. *City of Alamogordo v. Walker Motor Co.,* 94 N.M. 690, 616 P.2d 403 (1980).

This principle applies whether the special statute was passed before, after or along with the general statute. *Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 2479, 41 L.Ed.2d 290 (1974); *Saiz v. City of Albuquerque,* 82 N.M. 746, 487 P.2d 174 (1971); *State v. Lujan,* 76 N.M. 111, 412 P.2d 405 (1966).

The principle makes even more sense when applied to different provisions of the same statute. In *Cromer v. J.W. Jones Construction Company,* 79 N.M. 179, 441 P.2d 219 (Ct.App.1968), this court noted:

It is likewise well settled that a general provision is controlled by one that is special the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject as against a general provision although the latter standing alone would be broad enough to include the subject to which the more particular provision relates.

79 N.M. at 184, 441 P.2d 219 (Citations omitted).

A case in point is *State v. Blevins,* 40 N.M. 367, 60 P.2d 208 (1936). In *Blevins* the defendant was held to be improperly charged under a general statute making it unlawful to sell property which he did not own. The Supreme Court held that he should have been charged under a statute that made it unlawful for any person to sell any cattle he did not own. Proof of selling cattle not owned by the defendant would have justified a conviction under either statute, but the Court held that he could be charged only under the more specific. As the Court noted, in order for a single act to

be a violation of two statutes, each statute must require proof of an additional fact which the other does not. In *Blevins* § 35–2405, the more specific statute, required proof of fact not required by the more general statute; that being the property sold was the livestock described in the special statute. The fact that the general statute required proof of nothing in addition to what was required under the special statute did not justify the defendant's being charged under the general statute. Each offense must require proof of an element not found in the other in order to allow both to be charged. Even under the State's construction, this case is strikingly similar to *Blevins.*

Under the State's construction, subsection B could require an element not required by subsection A, to wit, that the alleged conspiracy succeeded in controlling prices. The State's interpretation of subsection A, covering conspiracies which do not succeed in controlling prices, would make it an offense which requires nothing to be proved beyond that already required by subsection B.

Under the facts stipulated in this case there is no significant difference between price fixing, conspiracies and price controlling conspiracies. The fixing, stabilizing, maintaining or controlling prices all deal with the same subject matter—restraint of trade. *See United States v. Socony-Vacuum Oil Co.,* 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); *United States v. Trenton Potteries, Co.,* 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700 (1927). The State stipulated that both charges were based on an alleged conspiracy among competitors to fix the retail price of gasoline. The indictment charged one offense, the stipulation contained one alleged conspiracy and the State stipulated that the charge could be brought under either subsections A or B.

Subsections A and B together obviously deal with all activities considered to be unlawful restraints of trade. Subsection B governs conspiracies controlling of fixing prices, quantity and exchange of goods, which are per se violations not requiring

proof of a restraint of trade under the particular circumstances. If a conspiracy successfully affects prices, thereby causing real harm to the public, the penalties are those provided in that act. If the conspiracy attempts to control prices but fails to have any such effect, thereby causing no injury in fact, the penalties are those set forth by the New Mexico attempt statute. *See* NMSA 1978, § 30–28–1. In this case, the penalties would be the same that were provided for both successful and unsuccessful conspiracies before the 1979 amendments. NMSA 1978, § 31–19–1A. If the State can show an unreasonable restraint of trade under subsection A, other than an alleged agreement or conspiracy to control prices, quantities or exchange, the State should proceed under that subsection.

The representation of the State in its brief that the trial court's construction of the statute would legalize price fixing in New Mexico is simply incorrect.

I would hold that the charge against the defendant could be brought under either subsection A or B, but since B is a more specific statute it is controlling.

The order of the trial court should be affirmed. Appellate costs should be paid by the State.