780 P.2d 627

John CLOUGH, M.D., and Jeanne Clough, Plaintiffs–Appellants,

v.

ADVENTIST HEALTH SYSTEMS, INC., d/b/a Sierra Vista Hospital, Robert Trimble, Dominica Rush, Donald Clark, M.D., Mario Herrera, M.D., Reuben Marchisano, M.D., Pete Grenko, M.D., and James Hockenberry, M.D., all individual defendants sued in their individual capacities, and as officials of the hospital, Defendants–Appellees.

No. 18056.

Supreme Court of New Mexico.

Sept. 5, 1989.

Rehearing Denied Oct. 19, 1989.

Glore & Venable Associates, Denise M. Glore, Albuquerque, for plaintiffs-appellants.

Montgomery & Andrews, John B. Pound, Santa Fe, for defendants-appellees.

## OPINION

BACA, Justice.

This action arises from the limited suspension of Dr. Clough's privileges at Sierra Vista Hospital (SVH) in Truth or Consequences, New Mexico. Dr. Clough and his wife sued five physicians who were on the medical staff of SVH during the time of suspension (Drs. Marchisano, Clark, Herrera, Grenko, and Hockenberry). Dr. Clough also sued the SVH President (Dee Rush), the SVH Chairman of the Board of Directors and Vice–President of Adventist Health Systems, Inc. (Robert Trimble), and the Adventist Health Systems, Inc., a foreign corporation doing business in New Mexico as SVH, alleging antitrust, defamation, interference with business relations, breach of contract, wrongful termination, and intentional infliction of emotional distress claims. The last two counts were dismissed. All individual defendants were sued in their individual capacities and as officials of SVH. Subsequently, all defendants filed a summary judgment motion supported by a brief, affidavits, answers to interrogatories, hospital and medical staff bylaws, and a deposition. In response, Dr. Clough submitted a transcript from an administrative hearing, depositions, and a brief. On September 9, 1988, the district court granted defendants summary judgment dismissing all claims by plaintiffs against all defendants. Plaintiffs appeal.[1] We affirm.

## FACTS

Dr. Clough, a board certified surgeon, has practiced medicine in Truth or Consequences since April 1982. In March 1982, Dr. Clough applied for appointment to the medical staff of SVH as a general surgeon. On April 26, 1982, Dee Rush, SVH President, wrote a letter to Dr. Clough informing him that the SVH Board of Directors granted Dr. Clough active staff privileges on February 15, 1982. Subsequently, Dr. Clough's applications for reappointment to the medical staff and renewal of privileges for the years 1983 and 1984 were approved.

On December 5, 1984, Dr. Clough admitted Meda Lee Fettas, a 74–year–old patient, for a vaginal hysterectomy. The next day, Dr. Clough, with his assistant Dr. Hockenberry, performed the vaginal hysterectomy and made repairs to the bladder and rectum. During the evening of December 6, Dr. Clough learned from a nurse's report and observed that Meda Fettas had no urinary output. This lack of urinary output indicated that Dr. Clough had placed sutures too close to the ureters and blocked them during the operation. When an individual's ureters are blocked, kidney failure can result, a life-threatening condition. On the morning of December 7, 1984, Dr. Clough administered an intravenous pyelogram (IVP), an X-ray of the kidneys, ureters, and bladder with the aid of an intravenous injected dye. The IVP suggested blockage of both ureters. Dr. Clough then asked Dr. Leonard Becker to insert catheters into the ureters to identify the exact point of blockage. After insertion of the catheters, Dr. Becker could not identify the uretal openings. Dr. Clough also consulted with Dr. Musser, a urologist in Las Cruces, New Mexico, to obtain information on performing a second surgery. Dr. Clough, without any assistance, then reoperated on Meda Fettas to remove the sutures. During the second surgery, Dr. Clough removed the sutures and obtained an immediate flow of urine. Dr. Clough thought he relieved the blockage. Dr. Clough then got an X-ray on the operating table that indicated a faint visualization of both ureters. He resutured the area. Dr. Clough, however, did not administer an IVP again at any time following the second surgery. Meda Fettas was discharged on December 13, 1984.

On December 24, 1984, Meda Fettas was readmitted to SVH complaining of pain in her right lower abdomen. An IVP was administered that showed blockage of the right ureter. Dr. Clough then arranged for the transfer of Meda Fettas to Dr. Musser for treatment. Dr. Musser operat-

---

1. Jeanne Clough, Dr. Clough's wife, is included in the caption of this case. However, plaintiffs made no argument in their brief-in-chief that summary judgment against Jeanne Clough was improper. Thus, we conclude that Jeanne Clough has abandoned her appeal.

ed on Meda Fettas removing a suture from her right ureter.

On January 14, 1985, Meda Fettas called Dee Rush, SVH President, threatening to file suit. Meda Fettas told Dee Rush that Dr. Musser had identified a suture in her ureter, and she complained of Dr. Clough's treatment. In her affidavit, Dee Rush stated that Meda Fettas and her daughter visited her on January 21, 1985, to discuss Dr. Clough's surgery. On January 22, 1985, Meda Fettas' daughter wrote Dee Rush a letter, complaining of Dr. Clough's treatment of her mother. Following these complaints, Dee Rush took an incident report she received from Ann Thomas, a registered nurse, to the executive committee for their review. This report related the lack of urinary output after the first surgery, Dr. Becker's unsuccessful catherization of the ureters, the occurrence of the second surgery, and the return of urinary output after the second surgery. On January 22, 1985, the executive committee, comprised of Drs. Clark and Herrera, met. The executive committee, who reviewed Meda Fettas' chart and the incident report, recommended the suspension of Dr. Clough's elective privileges and that Dr. Clough work under Dr. Hockenberry's direct supervision. A medical staff meeting was held on the same day. Our review of the physicians' affidavits, their depositions, and Dee Rush's deposition shows that Dr. Clark discussed the background of Meda Fettas, including the incident report and medical charts, Meda Fettas and her daughter's complaints, and Dr. Clough's failure to use an IVP after the second surgery at the meeting. The medical staff unanimously voted to suspend Dr. Clough's elective privileges, and placed Dr. Clough under the direct supervision of Dr. Hockenberry for emergencies. Dee Rush then wrote Dr. Clough a letter to inform him of the medical staff's decision and the referral of their action to the SVH Board of Directors within a ten-day period.

On January 25, 1985, Dr. Clough wrote a letter to Dee Rush requesting the appointment of a hearing committee, pursuant to the medical staff bylaws, to consider the suspension of his clinical privileges. On January 28, 1985, the SVH Board of Directors met and modified the medical staff's decision. The Board voted to reinstate Dr. Clough's elective privileges and require only future supervision for surgical procedures. On February 9, 1985, Dr. Clough requested another hearing before a hearing committee to consider "the decrease in his privileges." After receipt of Dr. Clough's letter, Dee Rush, with Dr. Clough's approval, tried to assemble a panel of outside physicians who had not previously participated in the medical staff's decision. A panel of three physicians from Albuquerque were assembled to serve on the hearing panel. On April 3, 1985, the panel held its meeting and modified the board's decision. The panel believed that the requirement of supervision for surgical procedures was unnecessary. The hearing panel recommended that Dr. Clough be supervised in all vaginal surgeries. At an executive committee meeting held on April 30, 1985, and at a Board of Directors meeting, the members decided to remove the supervisory restrictions for surgical procedures. In May 1985, Dr. Clough resigned from the medical staff.

## SUMMARY JUDGMENT STANDARDS

■ If the defendants make a prima facie showing of no genuine issue of material fact and that as a matter of law they were entitled to summary judgment, then the burden shifted to Dr. Clough to show at least a reasonable doubt as to whether a genuine issue for trial existed. *Koenig v. Perez,* 104 N.M. 664, 726 P.2d 341 (1986). Moreover, mere argument or bare contentions of the existence of a material issue of fact is insufficient. *Spears v. Canon de Carnue Land Grant,* 80 N.M. 766, 769, 461 P.2d 415, 418 (1969). The party opposing the summary judgment motion must adduce evidence to justify a trial on the issues. *Id.*

## FORM OF ORDER GRANTING SUMMARY JUDGMENT

■ Dr. Clough questions the propriety of the trial court finding the "ultimate issues of fact" and then concluding as a matter of law that the plaintiff had failed

to provide any facts supporting his six claims in its order. In *Garrett v. Nissen Corp.*, 84 N.M. 16, 18, 498 P.2d 1359, 1361 (1972), we held that a trial court is not required to state reasons for granting a summary judgment in an involved case, overruling *Wilson v. Albuquerque Board of Relators*, 81 N.M. 657, 472 P.2d 371 (1970). In *Wilson*, the former rule stated "[I]n involved cases where the reason for the summary judgment is not otherwise clearly apparent from the record, the trial court should state its reasons for granting it in a * * * recital in the judgment." *Id.* at 661, 472 P.2d at 375. We believe that the trial court's findings of fact were not fatal; rather, they were simply harmless surplus. Thus, we do not believe the trial court abused its discretion.

## ANTITRUST CLAIM

■ Dr. Clough's antitrust claim is that the physicians on the executive committee, the credentials committee, the SVH Board of Directors, and the hospital staff combined and conspired to affect his right to practice medicine at SVH by preventing him from receiving patient referrals, by forcing him to abide by an unreasonable condition placed on his practice, and by making him appear to be a less than fully qualified physician. Dr. Clough alleges the combination was an attempt to restrain trade and was an unreasonable restraint of trade, violating NMSA 1978, Section 57–1–1 (Repl.Pamp.1987) of the New Mexico Antitrust Act. Dr. Clough defines the committees as combinations of individual doctors who compete with each other for referrals, patients, and fees. According to Dr. Clough, the relevant markets pertaining to his practice included emergency room care for his private patients and for patients admitted for emergency care at SVH, and surgery for his private patients and for patients admitted at SVH.

Under Section 57–1–1, "every contract, agreement, combination or conspiracy in restraint of trade or commerce, any part of which trade or commerce is within this state, is unlawful." In *Smith Machinery Corp. v. Hesston, Inc.*, 102 N.M. 245, 249, 694 P.2d 501, 505 (1985), we stated that

Section 57–1–1 was patterned after Section 1 of the federal Sherman Antitrust Act, 15 U.S.C. § 1. We also noted that our Antitrust Act is to be construed "'in harmony with judicial interpretations of the federal antitrust laws.'" *Id.* at 249, 694 P.2d at 505. In *Smith*, we referred to several federal cases to interpret Section 57–1–1 and its application to illegal tying arrangements. To establish a violation, the plaintiff must show a conspiracy or combination among two or more persons, *see Albrecht v. Herald Co.*, 390 U.S. 145, 148–49, 88 S.Ct. 869, 870–71, 19 L.Ed.2d 998 (1968), and an unreasonable restraint of trade due to this combination or conspiracy. *See Standard Oil Co. v. United States*, 221 U.S. 1, 58–59, 31 S.Ct. 502, 515, 55 L.Ed. 619 (1911); *State v. Gurley*, 25 N.M. 233, 238–40, 180 P. 288, 290–91 (1919). Furthermore, the object of the conduct must be to restrain trade. *State v. Gurley*, 25 N.M. at 237, 180 P. at 290. "[M]ere contacts and communications, or the mere opportunity to conspire, among antitrust defendants is insufficient evidence from which to infer an anticompetitive conspiracy in the context of the denial of hospital surgical privileges." *See e.g., Cooper v. Forsyth County Hosp. Auth., Inc.*, 789 F.2d 278, 281 (4th Cir.), *cert. denied*, 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986).

To survive a summary judgment motion, the plaintiff must present direct or circumstantial evidence of a conspiracy. *Cooper*, 789 F.2d at 281. Here, Dr. Clough failed to produce direct evidence of a conspiracy, an agreement to conspire among the members of the committees. Instead, Clough relies on circumstantial evidence seeking to impart improper motivations or reasons for the committees' decisions to discipline Dr. Clough. The Supreme Court, in *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 596–97, 106 S.Ct. 1348, 1361, 89 L.Ed.2d 538 (1986), has stated "if [the alleged conspirators] had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy." Defendants adduced evidence

that the executive committee merely recommended the type of action to take against Dr. Clough; the medical staff and Board of Directors gave serious objective consideration in reviewing Dr. Clough's conduct and reaching their decisions, and the rationale for the decisions was related to health care and the financial impact on SVH. The affidavits of the physicians indicate concerns about the quality and care of SVH's hospital services and the need to exercise control over staff privileges to limit their liability from the acts of a staff physician. The physicians in their affidavits also denied any improper motivations on their part in disciplining Dr. Clough. Indeed, all defendants found problems with Dr. Clough's failure to use an IVP after the second surgery; thus, the competence and judgment of Dr. Clough was at issue. Finally, Dr. Clough has conceded in his deposition that he *supposed* he was a competitor and *felt* defendants had something to gain in suspending him. As Dr. Clough has failed to produce evidence that "reasonably tends to prove * * * 'a conscious commitment to a common scheme designed to achieve an *unlawful objective,*'" *Monsanto Co. v. Spray–Rite Service Co.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984) (emphasis added), we hold that defendants made a prima facie case supporting summary judgment. As we find no evidence of a conspiracy or combination here, we do not reach the issue of whether the conduct of defendants entitled them to protection under the state action doctrine.

## DEFAMATION CLAIM

■ Dr. Clough alleges Dee Rush and Robert Trimble, members of the SVH Board of Directors, made statements to the Sierra County Sentinel, a local newspaper, on January 28, 1985, responding to reporters' questions about the suspension of a physician's privileges. Dr. Clough contends Rush and Trimble identified him by name, these statements were slander per se and slander per quod, defendants were not privileged to make these statements, and these statements, published throughout the community, defamed his reputation. Dee Rush did issue a carefully worded press release following the Board's meeting, which was reported in the Sierra County Sentinel as follows:

Rumors a local doctor was to be denied staff privileges at Sierra Vista Hospital were denied Monday in a brief and definite statement released to the press by Hospital Administrator Dee Rush.

She pointed out there was a meeting of the hospital board Monday morning in T–or–C but, no action was taken that would deny staff privileges to the doctor involved.

Mrs. Rush told reporters, "Dr. John Clough has privileges and is a member of the hospital staff and can admit patients to the hospital. "Beyond that," she said, "the information of subjects discussed in the board meeting are privileged and I am saying nothing more."

She indicated when questioned by news persons that she did not know who was responsible for stirring up the public and resulting in approximately 50 persons appearing at the hospital at 11:00 Monday morning to protest what they expected to be an announcement concerning Dr. Clough's future with the medical institution.

Mr. R.L. (Robert) Trimble, of Ft. Worth, Texas, president of the Sierra Vista board and vice president of Adventist Health Systems/Sunbelt, Region II, presided at the board meeting and later spoke to the assembly in the hospital lobby, stating exactly what Mrs. Rush told reporters and nothing else.

It was pointed out that Adventist Health Systems/Sunbelt is a private enterprise and that board meetings of the commercial firm were not public and that for professional ethics reasons, matters discussed about members of the medical profession were privileged information and not public information until due process had been [sic] provided to any person.

The Sierra Vista board of directors is comprised of 11 persons, seven of whom are area residents. Trimble serves as chairman of the board and James Grider, former T–or–C resident now residing in Las Cruces, is vice chairman.

Mrs. Rush said a quorum of the board was present for Monday's meeting and she was authorized to release the statement made and would make no further comment.

The elements of defamation include a defamatory communication published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff. *See* SCRA 1986, 13–1002. As an affirmative defense, the defendants in their answer, argued that the statements in the press release were true. The record reveals that the Board *reinstated* the previously suspended elective privileges of Dr. Clough, and Dr. Clough was still a member of the medical staff. Thus, the statement was true. We also note in passing that Dr. Clough told several friends before the meeting about his suspension. We thus hold that no material issues of fact exist on the defamation count. Having found that no defamation exists, we do not consider the application of the Review Organization Immunity Act, NMSA 1978, Sections 41–9–1 to –7 (Repl.Pamp.1986) to the defamation claim here.

## INTERFERENCE WITH CONTRACTUAL RELATIONS CLAIM

■ Dr. Clough argues that material facts exist regarding defendants' motives. Dr. Clough alleges that the suspension of his hip-pinning privileges, hospital privileges, and statements to the Sierra County Sentinel about him caused a permanent interference with all business relationships he had with his current and future patients. We first observe that Dr. Clough is making a *bare* allegation regarding "suspension" of his hip-pinning privileges. The record reveals that the staff refused to let any physician do hip-pinnings because SVH did not have the proper equipment. Thus, this claim fails.

Dr. Clough's other contentions are meritless. In *Kelly v. St. Vincent Hosp.*, 102 N.M. 201, 692 P.2d 1350 (Ct.App.1984), St. Vincent Hospital terminated Kelly's staff privileges when he failed to obtain medical malpractice insurance, which the hospital required all medical staff members carry.

Kelly contended that St. Vincent tortiously interfered with his existing contractual relations by adopting the malpractice insurance requirement, by refusing to exempt him from the requirement, and by deciding not to renew his staff privileges. The court of appeals observed that tortious interference is accomplished by an *improper* motive *solely* to harm the plaintiff or by improper means. The court of appeals found that St. Vincent had legitimate business purposes for adopting the malpractice insurance requirement and, even if St. Vincent had a motive to harm plaintiff, no material issue of fact existed. Analogously, even if Dr. Clough had produced evidence of improper motives, we have concluded that legitimate health care and financial reasons existed for suspending Dr. Clough's privileges. We also note that Dr. Clough has failed to produce sufficient evidence showing how the newspaper article interfered with his business. As a matter of law, we conclude that no material issue of fact exists to support Dr. Clough's claim of tortious interference.

## BREACH OF CONTRACT CLAIM

■ Dr. Clough alleged that numerous policies and procedures found in the bylaws governed physicians at SVH, including himself. Dr. Clough contended he followed all of the bylaws, and SVH, the hospital committees, board of directors, and employees are bound by the bylaws. Dr. Clough maintains defendants' termination of his hip-pinning privileges, the termination of his hospital privileges, and the failure to afford proper remedial procedures in a timely manner violated the procedures in the bylaws, thus constituting a cognizable claim under New Mexico law for breach of his employment contract. On May 25, 1982, Dr. Clough received a copy of the medical staff bylaws. Defendants submitted copies of the hospital and medical bylaws in evidence, and assumed arguendo in their brief supporting summary judgment that these bylaws constituted an implied contract. It appears that the trial court found that an implied contract existed and then that no genuine issues of fact exist as to breach of contract.

We have observed that Dr. Clough's contentions relating to termination of his hip-pinning privileges are fallacious. Thus, we do not reach the issue of whether defendants afforded proper timely remedies during their review of Dr. Clough's hip-pinning privileges. We only address whether the defendants followed the provisions in the medical staff bylaws in conducting its hearings relating to the suspension of Dr. Clough's privileges. In *Kelly,* 102 N.M. at 205, 692 P.2d at 1354, the court of appeals reviewed whether St. Vincent had followed certain procedures required by its bylaws. We also do so here. Dr. Clough maintained the executive committee and medical staff violated Dr. Clough's due process rights because both decisions were made in secret sessions without his attendance. The procedures established for suspension of a physician's clinical privileges are set forth in Article V, Sections 1 through 2 of the medical staff bylaws. The affected individual shall be permitted to make an appearance before the executive committee prior to its taking action on such request. Under Article V, Section 1, this request refers to a written request submitted by a member of the board of trustees to the executive committee indicating the grounds for suspension of a medical staff's total clinical privileges or elective admitting privileges for a term, or revocation of staff membership. Our review of the record does not indicate that Dr. Clough made an oral or written request to the executive committee to be in attendance. It is unclear from the record whether Dr. Clough actually attended the executive committee meeting. Moreover, all affidavits and depositions of defendants show that Dr. Clough attended the medical staff hearing. Thus, Dr. Clough's claim must fail.

Further, Dr. Clough asserted an unreasonable delay in the time it took SVH to arrange the final formal administrative hearing. We observe that Article VI, Section 5 states that a hearing shall occur within twenty days. Here, Dee Rush wrote a letter dated February 11, 1985, to Dr. Clough asking that he give some leeway to the maximum of twenty days to assemble a hearing panel of physicians who were not on the SVH medical staff. In the letter, she also assured Dr. Clough that she would do her utmost to get the panel convened within twenty days. In Dr. Clough's deposition, he conceded that the bylaws precluded a hearing panel comprised of physicians who had already voted to suspend his privileges. Dr. Clough also agreed that Dee Rush acted properly in going outside the hospital to get doctors to comprise a hearing panel. Dee Rush testified in her deposition that once she contacted a doctor from Albuquerque for assistance in convening a panel, she had very little control over when the panel could meet. Under these circumstances, we believe beyond question that a two-month delay in assembling a panel of outside physicians to participate in a hearing panel in Truth or Consequences, was not unreasonable, particularly when Dr. Clough had acquiesced to the assembly. Thus, we hold that summary judgment was proper on the breach of contract claim. For the foregoing reasons, the decision of the trial court is affirmed.

IT IS SO ORDERED.

SOSA, C.J., and RANSOM, J., concur.