692 P.2d 1350

Matthew J. KELLY, Alice C. Martinez, Joanna Lawrence, Greg Boynton, Markley Lumpkins, Dean Haggard, Ernest Messer, and Skye Osborne, Plaintiffs-Appellants,

v.

ST. VINCENT HOSPITAL, a New Mexico non-profit Corporation; Juan Lopez, Mrs. Allen Vedder, Samuel Z. Montoya, Forrest S. Smith, Paul Kaufman, A.N. Bodelson, Richard Carpenter, Arturo N. Gonzales, Roger N. Miller; Gerald P. Rodriquez, Phillip Trujillo, Stephen E. Watkins, William C. White, Marvin Whitlock, Mrs. Jack Boulton, Donald D. French: All Individual Defendants sued in their Individual Capacity, and as Members of the Board of Trustees of St. Vincent Hospital, Defendants-Appellees.

No. 7581.

Court of Appeals of New Mexico.

Dec. 4, 1984.

Morton S. Simon, Friedland, Simon & Vigil, Santa Fe, for plaintiffs-appellants.

John B. Pound, Montgomery & Andrews, P.A., John S. Catron, Catron, Catron & Sawtell, P.A., Santa Fe, for defendants-appellees.

**OPINION**

HENDLEY, Judge.

Plaintiffs appeal the trial court's grant of defendants' motion for summary judgment. The appeal involves 1) whether New Mexico should recognize a common law theory of judicial review of staffing decisions made by the board of a private non-profit hospital, and 2) whether there are genuine issues of material fact that the hospital tortiously interfered with the plaintiff doctor's contractual relations with his patients. In this opinion, we recognize a common law theory of judicial review, but we hold, under the circumstances of this case, that there is no genuine issue of material fact and that defendants were entitled to summary judgment as a matter of law. Therefore, we affirm the trial court's decision.

Defendants, hospital and its board (St. Vincent), promulgated a policy requiring all members of the hospital's medical and dental staff to carry malpractice insurance. This was done after extensive hearings.

Because plaintiff (Kelly) failed to obtain insurance, the hospital terminated his staff privileges when staff privileges came up for renewal.

**Judicial Review**

St. Vincent's first argument is that *Akopiantz v. Board of County Commissioners of Otero County,* 65 N.M. 125, 333 P.2d 611 (1958), prohibits judicial review under the facts of this case. We disagree. In *Akopiantz* the sole issue was the factual determination of whether the hospital was public or private. Plaintiff had conceded that if the hospital was private he could not prevail. The supreme court then analyzed the law and the lease agreements between the hospital and the county, and held the hospital was private. The language used by the court of "exclusive right of control and management" only addressed the hospital's right vis-a-vis the county. The holding was based on plaintiff's concession and was not a ruling by the court that, if a hospital is private, there is no judicial review of a denial of staffing privileges. *Akopiantz* is not controlling.

Prior to 1963, few jurisdictions recognized a court's authority to review the medical staff privilege decisions of a private hospital. In 1963, the Supreme Court of New Jersey, in *Greisman v. Newcomb Hospital,* 40 N.J. 389, 192 A.2d 817 (1963), rejected the majority position of non-review. The *Greisman* court held that powers used in the selection of the medical staff are powers "deeply embedded in public aspects, and are rightly viewed * * * as fiduciary powers to be exercised reasonably and for the public good."

Judicial review of management decisions now is permitted in a minority of jurisdictions. It is either established by case law, *see Holmes v. Hoemako Hospital,* 117 Ariz. 403, 573 P.2d 477 (1977), or by statute, *Carida v. Holy Cross Hospital, Inc.,* 427 So.2d 803 (Fla.App.1983). New Mexico does not have a statute. We are impressed with the reasoning in *Holmes.* New Mexico is very similar to Arizona—many towns

are isolated, have only one hospital, and a staffing decision can essentially deny a doctor the opportunity to practice medicine.

Medical services often are viewed as a necessity. Most services associated with medical care, therefore, are characterized by inelastic demand relationships. Inelastic demand means, because the services are necessary, consumers will continue to purchase them no matter how highly priced the services are. H. Ruchlin & D. Rogers, *Economics and Health Care* ch. 4 (1973). As such, suppliers of medical services are not responsive to the self-regulation of the market place. When provision of services is also monopolized in an area, a consumer cannot demonstrate his or her dissatisfaction with the service by patronizing another supplier (the effect of monopolization) or by refraining from buying the service (the effect of inelasticity). Whereas most free enterprise is ideally governed by supply and demand and will, therefore, conform to consumer needs, the medical industry operates outside of this system of self-regulation.

In New Mexico, as of November 1, 1981, eighteen general hospitals were public (not counting Public Health Service Indian Hospitals, which are not open to the general public), and thirty-nine were private. Of these thirty-nine private hospitals, fifteen were the only hospitals in their area, creating a monopoly on provision of hospital services to that area. Health Care Financing Administration, Health Standards/Quality Bureau, H.C.F.A. Pub. No. 3007, *Directory of Medical Facilities* (1981).

■ New Mexico is in a unique situation where, in many instances, only one hospital serves an isolated area. Because hospital care is often a necessity, and because there is no economic mechanism which encourages hospitals to make consumer-sensitive policy choices, some public oversight must be exercised over private hospitals. Accordingly, we hold, based on the reasoning

in *Holmes*, that we will review, under very limited circumstances, decisions made by a private hospital board.

■ We do not view our holding, as defendants suggest, as placing us in the position of being a "super" board of directors. Nor do we see our holding as an interference in the negotiations which take place in the private sector. However, as stated in *Holmes*:

> The rule [that doctors carry malpractice insurance] is reasonable on its face. We can envision situations, however, where such a rule would not be reasonable in its application. Then we must remind hospitals and their governing bodies that certain of the powers they exercise are fiduciary powers and must be exercised reasonably, and for the good of the public which they serve.

■ In the present case, the question now arises of whether there is a genuine issue of material fact in Kelly's claim that St. Vincent acted in an arbitrary and capricious manner when it (a) decided to adopt the mandatory malpractice insurance requirement, and (b) decided not to exempt him from the requirement, terminating his staff privileges at the hospital. The standard on review of summary judgment, *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972), is that the court should view the matters presented in the most favorable aspect they will bear in support of the right to trial on the issues. *North v. Public Service Co. of New Mexico*, 97 N.M. 406, 640 P.2d 512 (Ct.App.1982). The burden is on defendants to sustain summary judgment. *Reinhart v. Rauscher Pierce Securities Corp.*, 83 N.M. 194, 490 P.2d 240 (Ct.App.1971). Summary judgment is drastic and its purpose is not to substitute for a trial of issues of fact. *Holcomb v. Power*, 83 N.M. 496, 493 P.2d 981 (Ct.App.1971). We analyze the facts underlying Kelly's charge of "arbitrary and capricious" behavior, applying the test from *Holmes*.

**The decision to require insurance: Was it *substantively* arbitrary and capricious?**

In *Holmes v. Hoemako Hospital*, the court set out the standard for determining

whether a hospital regulation was reasonable or arbitrary. If the regulation pertained to the orderly management of the hospital, and if it, in most instances, was made for the protection of patients, then it was reasonable. If a rule has a rational basis, then it is not arbitrary. *See Garcia v. New Mexico Human Services Dept.*, 94 N.M. 178, 608 P.2d 154 (Ct.App.1979).

■ In this case, St. Vincent demonstrated that the mandatory malpractice insurance requirement served multiple purposes. Mandatory insurance would protect insured doctors against suits when practicing with uninsured doctors. The hospital would save money on its insurance coverage. Patients would have a fund from which to recover for malpractice. These purposes are rational under both the *Holmes* and *Garcia* standards.

Kelly disputes that the hospital would save money on its own insurance coverage if all doctors were required to carry malpractice insurance. He does not address other purposes the hospital had for requiring mandatory malpractice insurance. He implies that St. Vincent adopted the requirement to remove him, indirectly, from the staff. He never, however, states that this was the sole purpose for the requirement.

There are legitimate business purposes for the insurance requirement. The fact that Kelly disputes its absolute necessity is irrelevant. There is no material issue of fact.

**The decision to require insurance: Was it *procedurally* arbitrary and capricious?**

Kelly urges this court to review the procedure St. Vincent used in adopting the insurance requirement. Kelly claims that St. Vincent violated its bylaws in promulgating the insurance policy because only the staff has the power to set requirements for staff membership. He also claims that the hearings were presided over by a partial decision-maker, and that the board had decided on its position to adopt the insurance requirement before the hearings began. We limit our review to whether St. Vincent followed the procedures for promulgating rules required by the hospital bylaws. The hospital bylaws have no provisions for notice and hearing when the board promulgates rules and regulations. We do not, therefore, reach Kelly's claims concerning an impartial decision-maker and the board's predisposition to adopt the insurance policy.

■ Kelly argues that, because the hospital violated its bylaws, that is evidence the hospital acted in an arbitrary and capricious manner. The bylaws in question deal with the power to affect staff membership. There are two sets of bylaws involved: those of the hospital, and those of the medical and dental staff. The Bylaws of St. Vincent Hospital, Article VII, Section 1(a), state that the medical and dental staff "is impowered to * * * adopt bylaws and rules and regulations * * * for * * * membership [and] privileges * * * such bylaws and rules and regulations * * * to become effective when approved by the Board of Trustees." The Medical-Dental Staff Bylaws, Article III, Section 3(A), state: "The Board of Trustees shall act on appointments, reappointments, or revocation of appointments only after there has been a recommendation from the Staff * * *." The Preamble to the staff bylaws states that the staff "is responsible for the quality of the medical and dental care in the Hospital and must accept and assume this responsibility, subject to the ultimate authority of the Board of Trustees of St. Vincent Hospital * * *." The simple answer to Kelly's contention is that the hospital did not violate its bylaws because ultimate authority in all hospital matters rests with the board under the bylaws.

**The decision not to exempt Kelly and to terminate his privileges: Was it *substantively* arbitrary and capricious?**

There is evidence in the record that the cost of insurance to the hospital might be

the same regardless of whether Kelly was exempted from the malpractice insurance requirement. However, there is also evidence of a legitimate business purpose. If the uninsured doctor is legally responsible for malpractice, the injured patient has no source of money for compensation if the hospital is not found negligent. Kelly disputes that malpractice insurance protects the patient—it is merely a fund to "buy off" an already injured person. In other words, he disputes its effectiveness in protecting the patient before the malpractice occurs.

■ St. Vincent has demonstrated at least one legitimate purpose—compensating an injured patient—for not exempting Kelly from the insurance requirement. Kelly does not dispute that compensating the patient is a legitimate purpose. Kelly instead appears to criticize the efficacy of malpractice insurance as a protection for patients, a question which we need not address. Even though the purpose of saving the hospital money is disputed, there still remains one undisputed legitimate purpose. There is no issue of material fact, and summary judgment was proper.

**The decision not to exempt Kelly and to terminate his privileges: Was it *procedurally* arbitrary and capricious?**

■ The procedure in determining whether a rule or regulation has been violated must comport with due process; i.e., notice and hearing. *Holmes v. Hoemako Hospital.* Kelly cites two incidents violative of due process: there was a partial decision-maker in the person of Judge Montoya presiding over the exemption hearing, and the presence of the board's attorney, Mr. Pound, during the deliberations of the hearing committee tainted the decision-making process. He does not claim that St. Vincent failed to notify him of the hearing, or that it failed to give him a hearing. The record is clear that Kelly was amply provided with notice and an opportunity to be heard.

■ We do not view Judge Montoya's role, under the facts of this case, as anything more than that of a fact finder for the board. The board asked him, on its behalf, to chair a hearing prior to its decision to recognize an exception. Although Judge Montoya participated in the prior decision to require insurance, we view his participating in that decision as having no legal bearing on the issue of his role as fact finder in the exemption hearing. There was no allegation of actual prejudice. We conclude Judge Montoya was not precluded from acting as presiding officer. *See Citta v. Delaware Valley Hospital,* 313 F.Supp. 301 (E.D.Pa.1970). *See generally* Note, *Denial of Hospital Staff Privileges: Hearing and Judicial Review,* 56 Iowa L.Rev. 1351, 1369–70 (1970–71). Further, Judge Montoya did not participate in the decision not to exempt Kelly. There is no material issue of fact concerning Judge Montoya as a partial decision-maker.

■ Because Mr. Pound did not participate in the decision-making, and because we do not wish to unduly restrict a private hospital board's ability to confer with its counsel, we hold that, as a matter of law, Mr. Pound's presence during the board's deliberation did not taint the decision-making process. There is no material issue of fact, and summary judgment was proper.

■ As stated in the beginning of our opinion, our review of decisions made by a private, non-profit hospital is very narrow, restricted, and limited. We will not expand our review to be as broad as our review of public administrative bodies. Our basic reason for this limited and restricted holding is a strong reluctance in interfering in the private sector and a further reluctance in expanding the scope of judicial review.

■ We review the hospital's decision to see whether it was basically fair. Was it reasonable to adopt a policy of requiring doctors with staff privileges to have malpractice insurance? We hold it was a rea-

sonable requirement, the hospital's action was not arbitrary and capricious, and plaintiffs were afforded both substantive and procedural due process.

## Tortious Interference with Contractual Relations

Kelly's second issue on appeal is that St. Vincent tortiously interfered with his existing contractual relations with the plaintiff patients. Again, Kelly asserts that the tortious actions were St. Vincent's (a) adoption of the malpractice insurance requirement, and (b) refusal to exempt Kelly from the requirement and the decision not to renew his staff privileges.

■ Tortious interference can be accomplished by two means: by improper motive solely to harm the plaintiff, or by improper means. *M & M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. 449, 612 P.2d 241 (Ct.App.1980). The *M & M* court addressed a claim that defendant had intentionally interfered with plaintiff's prospective contract. In the present case, Kelly charges that St. Vincent interfered with existing contracts.

■ The *M & M* court adopted the 4 *Restatement (Second) of Torts* Section 766B (1979) definition of interference with prospective contracts, commenting that the definition, if applied to existing contracts, does not change the basis of liability. Section 766A, which addresses tortious interference with existing contracts, requires a showing of improper intent or wrongful means of interference. In comment g to Section 766, the *Restatement* discusses existing contracts which are terminable at will. An interest in a contract terminable at will is primarily an interest in future relations between the parties when the party has no legal assurance of the relation. For that reason, interference with these contracts is closely analogous to interference with prospective contracts.

The contracts between the plaintiff doctor and patients appear to be contracts at will. For that reason, and the other reasons cited above, we will apply the means or motive analysis from *M & M* to the claim of tortious interference with contractual relations in this case.

### Adoption of the malpractice insurance requirement: Was there an improper *motive* on St. Vincent's part?

■ St. Vincent's motive must solely have been to harm the plaintiffs. Because the record is replete with evidence that St. Vincent had legitimate business purposes for adopting the requirement, even if St. Vincent additionally had a motive to harm plaintiffs, there is no material issue of fact. Summary judgment was proper.

### Adoption of the malpractice requirement: Were improper *means* used?

Kelly argues that the court should find that, under the tort of interference with contractual relations, improper means includes St. Vincent's violation of its bylaws, the presiding over the hearings by an impartial decision-maker, and the close-minded attitude of the hospital before it ever engaged in fact finding.

■ In arguing that the hospital violated its bylaws and reached its decisions in a procedurally suspect manner, Kelly asks this court to include in the definition of "improper means" such actions as would ordinarily make out claims of ultra vires or violations of procedural due process. *Restatement, supra,* Section 766A, comment e, describes "improper means" as actions which are innately wrongful or predatory in character. As a matter of law, bare allegations of violation of bylaws or procedural due process, without more, do not make out a claim of improper means under a claim of tortious interference with contractual relations. Because there is no material issue of fact in Kelly's claim of improper means, summary judgment was proper.

### Decision not to exempt Kelly from the insurance requirement: Was there an improper *motive* on St. Vincent's part?

■ Here, there is evidence that there was a legitimate business purpose for the

decision not to exempt Kelly. There is evidence that not exempting Kelly will protect patients against loss when the hospital is not negligent, but the physician is. Even if there was an improper motive, it was not the sole motive. Summary judgment was proper.

**Decision not to exempt Kelly: Were improper *means* used to reach the decision?**

Kelly once again cites to evidence of the hospital violating its bylaws and engaging in suspect procedures. As discussed above, these allegations do not make out a charge of improper means. There is no material issue of fact.

### Conclusion

Because there is no material issue of fact to any of Kelly's claims, the trial court did not err in granting the hospital summary judgment.

Affirmed.

**IT IS SO ORDERED.**

NEAL and MINZNER, JJ., concur.