# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number:  2009-NMCA-050

Filing Date:  April 1, 2009

Docket No. 27,553

LIZA ZARR,

      Plaintiff-Appellant,

v.

WASHINGTON TRU SOLUTIONS, L.L.C.,
and DAROLD HAUG,

      Defendants-Appellees.


APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Linda M. Vanzi, District Judge

Steven Granberg Attorney at Law, P.A.
Laurel Nesbitt
Albuquerque, NM

for Appellant

Sheehan, Sheehan & Stelzner, P.A.
Luis G. Stelzner
Kim A. Griffith
Albuquerque, NM

for Appellees

## OPINION

**BUSTAMANTE, Judge.**

**{1}**    Following termination from her employment with NCI Information Systems, Inc. (NCI), Appellant Liza Zarr (Zarr) sued NCI, Washington Tru Solutions, LLC (WTS), Washington Group International, Inc., Darold Haug (Haug), and Farok Sharif (Sharif), alleging, among other things, intentional interference with a contractual relationship.  The

1

only claims contested on appeal are against WTS and Haug (collectively, Defendants).

**{2}** The district court granted Defendants' motion for summary judgment and dismissed Zarr's claims with prejudice. Zarr argues on appeal that the district court wrongly applied a sole-motive test to the improper-means prong of her claim of intentional interference; wrongly applied a sole-motive test to the improper-motive prong of her claim of intentional interference; and if the sole-motive test was proper, overlooked material issues of fact that Defendants acted solely to harm her.

**{3}** We reverse the district court's use of the sole-intent-to-harm standard as applied to the improper-means ground for an intentional-interference-with-contractual-relations claim and remand to the district court with instructions to reconsider Defendants' motion for summary judgment in light of the correct test. We affirm the district court's use of the sole-motive standard as applied to the improper-motive ground for intentional interference.

**FACTUAL BACKGROUND**

**{4}** WTS is a contractor for the United States Department of Energy (DOE). WTS subcontracted with NCI to perform the information technology (IT) functions of WTS's DOE project. Zarr was employed by NCI to head the IT project for WTS, and her responsibilities included oversight of expenditures and forecasting NCI's annual budget. Zarr's position required interaction with Haug, WTS's chief executive at the DOE project site.

**{5}** NCI was satisfied with Zarr's work performance during her employment. Haug, however, apparently experienced difficulties with Zarr throughout her involvement on the project. Areas of contention between Zarr and Haug included NCI's budget projections and personality-based friction. The situation culminated in August 2003 when Zarr took her concern about a WTS proposal directly to DOE personnel without first going through WTS. Haug was angry that Zarr had not gone through the proper channels and requested that Zarr be removed from the project. At the time, no other positions within NCI were available to Zarr, although she was offered a consulting contract. On August 19, pursuant to WTS's request, Zarr was released from her position at NCI. Zarr filed a complaint against NCI, WTS, and two individual employees of WTS in April 2004.

**DISCUSSION**

**{6}** New Mexico has recognized the tort of interference with contractual relations as a valid cause of action for at least fifty years. *Wolf v. Perry*, 65 N.M. 457, 461, 339 P.2d 679, 681 (1959) (noting that it is the "general rule . . . that one who, without justification or privilege to do so, induces a third person not to perform a contract with another" is liable for the harm caused by his action). *Wolf* involved an existing contract. The first case in New Mexico applying the tort to a factual setting involving a prospective contractual relationship is *M & M Rental Tools, Inc. v. Milchem, Inc.*, 94 N.M. 449, 612 P.2d 241 (Ct. App. 1980).

2

In *M & M Rental Tools, Inc.*, this Court asserted that "[t]he tort of interference with prospective contractual relations is well recognized." *Id.* at 452, 612 P.2d at 244. *M & M Rental Tools, Inc.* adopted the description of the tort found in the *Restatement (Second) of Torts* § 766B (1979) and then distilled it to its essence: "Whether the tort is described as improper interference or without privilege, either an improper motive (solely to harm plaintiff), or an improper means is required for liability." *M & M Rental Tools, Inc.*, 94 N.M. at 454, 612 P.2d at 246. Use of the disjunctive "or" in *M & M Rental Tools, Inc.* is meaningful. As this Court observed in *Kelly v. St. Vincent Hospital*, 102 N.M. 201, 207, 692 P.2d 1350, 1356 (Ct. App. 1984), the tort can be accomplished by either of two methods: improper motive solely to harm the plaintiff or improper means. If proven, either basis standing alone will support liability.

**{7}** Recently, our Supreme Court made clear that the "sole motive" test should only be applied in cases of prospective contracts. *Fikes v. Furst*, 2003-NMSC-033, ¶¶ 21-23, 134 N.M. 602, 81 P.3d 545. *See also Anderson v. Dairyland Ins. Co.*, 97 N.M. 155, 158, 637 P.2d 837, 840 (1981) (noting the courts are not as protective of prospective contractual relations as of existing contracts).

**{8}** The pure legal arguments of the parties revolve around their view of the basic contours of the tort. Zarr asserts that the improper means test has been improperly—perhaps inadvertently—made more stringent by recent case law from this Court; Defendants argue that the test was properly applied. Zarr also argues that requiring proof in prospective contract cases that a defendant's motive is solely to harm is more stringent than required by the *Restatement* formulation of the tort and should be changed to match the rule for existing contracts. We discuss each argument, along with related sub-issues, in turn.

**{9}** The standard of review for summary judgment is de novo. *Barncastle v. Am. Nat'l Prop. & Cas. Cos.*, 2000-NMCA-095, ¶ 5, 129 N.M. 672, 11 P.3d 1234. When considering an appeal of summary judgment, we determine "whether there are genuine issues of material fact relative to [a] plaintiff['s] claims and whether defendants were entitled to summary judgment as a matter of law." *Barreras v. N.M. Corr. Dep't*, 114 N.M. 366, 368, 838 P.2d 983, 985 (1992). The facts are considered in the light most favorable to the party opposing summary judgment. *Barbeau v. Hoppenrath*, 2001-NMCA-077, ¶ 2, 131 N.M. 124, 33 P.3d 675.

## A.      Correct Standard for Improper Means:  Sole Motive to Harm Not Required

**{10}** Zarr contends the district court improperly granted summary judgment in favor of Defendants by requiring Zarr to show Defendants used improper means with the sole intention of harming her. Zarr asserts the district court erroneously relied upon a case which inadvertently overstated the improper-means prong of the interference- with-contractual-relations test. We agree.

**{11}** In assessing Zarr's claim, the district court followed *Los Alamos National Bank v.*

3

*Martinez Surveying Services, LLC*, 2006-NMCA-081, ¶ 13, 140 N.M. 41, 139 P.3d 201, which required the plaintiff to show, as an alternative to improper motive, that the defendant used improper means with the sole intention of harming the plaintiff by interfering with a prospective business advantage. The court in *Los Alamos National Bank* cited *Silverman v. Progressive Broadcasting, Inc.*, 1998-NMCA-107, 125 N.M. 500, 964 P.2d 61, to support its position. The cause of action as described by *Silverman* requires the plaintiff to "prove that the defendant used improper means or acted with an improper motive intended solely to harm the plaintiff." *Id.* ¶ 28. Previous cases, including *Kelly* and *M & M Rental Tools, Inc.*, are clear that the sole intention to harm the plaintiff relates only to the improper-motive ground for the tort and not the improper-means ground. We see nothing in our prior cases supporting the different formulation of the improper-means ground stated in *Los Alamos National Bank*. Given the lack of any explanation in *Los Alamos National Bank*, for its departure from precedent, we conclude the statement in paragraph 13 of the opinion was inadvertent. *Los Alamos National Bank* simply overstated the test. Defendant argues that we should retain the *Los Alamos National Bank* formula in recognition of the lesser protection our cases afford prospective contractual relations. We see no reason to do so. We perceive no need to further reduce the reach of the tort. The improper means ground for liability is sufficiently governed by the nature of the conduct required to be shown. What may qualify as "improper means" depends to some degree on context and can include, but is not limited to predatory behavior, violence, threats or intimidation, deceit or misrepresentation, bribery, economic pressure, unfounded litigation, defamation, unlawful conduct, and perhaps violation of business ethics and customs. *M & M Rental Tools, Inc.*, 94 N.M. at 454, 612 P.2d at 246; *Restatement (Second) of Torts* § 767 cmt. c (1979). Requiring proof of this type of conduct is sufficient to winnow out unworthy cases without the veneer placed by the opinion in *Los Alamos National Bank*. To the extent that *Los Alamos National Bank* extends the test to require a showing that the defendant used improper means solely to harm the plaintiff, *Los Alamos National Bank* is overruled. We reverse the order for summary judgment and remand to the district court to determine if a material issue of fact exists as to whether, in requesting that Zarr be removed from the project, Defendants acted with improper means.

**B.      Correct Standard for Improper Motive:  Sole Motive to Harm Required**

**{12}**    Zarr argues the district court improperly granted summary judgment to Defendants when it applied the sole-motive test to the improper-motive basis of her claim of intentional interference with contractual relations. Zarr makes two points. First, she asserts that "New Mexico cases have rooted  the rule governing intentional interference with prospective contractual relations in a misreading of the *Restatement*." Second, she asserts she was not an at-will employee, and thus her claim should be treated as involving an existing contract.

**1.      Sole Motive to Harm**

**{13}**    Zarr's argument is straightforward.  She points out that Section 766B of the *Restatement* on which *M & M Rental Tools, Inc.* relied in recognizing the tort contains no

requirement that the defendant's sole motive be to harm the plaintiff. That much is accurate. However, Zarr does not adequately acknowledge the fact that courts are not bound by the *Restatement* and may depart from *Restatement* formulations as they see fit. *M & M Rental Tools, Inc.* did so, for example, when it declined to consider all of the factors listed in Section 767 of the *Restatement* to determine whether particular conduct is actionable. *M & M Rental Tools, Inc.* limited the specific factors to improper motive and improper means. *See M & M Rental Tools, Inc.*, 94 N.M. 453-54, 612 P.2d at 245-46.

**{14}**    Further, Zarr's argument fails to take into account the contextual nature of the tort.

> The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation.

*Restatement (Second) of Torts* § 767 cmt. b.

**{15}**    New Mexico's cases have consistently recognized that existing contractual relations merit more protection than prospective contracts and that, as a result, a different analysis is appropriate for the two situations. *Fikes*, 2003-NMSC-033, ¶¶ 21-23. This kind of differentiation is an appropriate recognition of the effect of context on the contours of the tort.

**{16}**    Finally, the sole-motive-to-harm-requirement is now enshrined in our Supreme Court authority. *Id.* As an intermediate court of appeals we are powerless to change the rule. *See Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973).

## 2.    Zarr Was an At-Will Employee

**{17}**    It is necessary to assess whether Zarr's employment relationship with NCI was at-will or if she had an implied employment contract that restricted NCI's ability to terminate her employment at any time. When an employment relationship is at-will, any claim of intentional interference with that relationship is treated as interference with a prospective employment relationship. *Silverman*, 1998-NMCA-107, ¶ 28; *Kelly*, 102 N.M. at 207, 692 P.2d at 1356. If Zarr's relationship with NCI was at-will, then the sole-motive test was the correct standard to apply to the improper-motive ground. Zarr claims that because her employment relationship with NCI limited NCI's right to terminate her employment, she was entitled to the greater protection offered to existing contracts. We disagree.

**{18}**    "New Mexico follows the general rule that employment is terminable at will by either the employee or the employer, absent an express contract to the contrary." *Gormley v. Coca-Cola Enters.*, 2004-NMCA-021, ¶ 20, 135 N.M. 128, 85 P.3d 252 (filed 2003), *opinion superseded by* 2005-NMSC-003, 137 N.M. 192, 109 P.3d 280. "An exception to the general

5

rule is the existence of an implied contract that limits an employer's authority to discharge."
*Id.*

> This Court has upheld findings of an implied employment contract provision that restricted the employer's power to discharge where the facts showed that the employer either has made a direct or indirect reference that termination would be only for just cause or has established procedures for termination that include elements such as a probationary period, warnings for proscribed conduct, or procedures for employees to air grievances.

*Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P.2d 776, 779 (1993). An implied contract may be found in written or oral representations, in the conduct of the parties, or in a combination of representations and conduct. *See Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989) (upholding a finding of implied contract based upon employee manual, words, and conduct of parties). Our Supreme Court has upheld findings that there was no implied contract where the alleged promise by the employer was not sufficiently explicit. *See Shull v. N.M. Potash Corp.*, 111 N.M. 132, 134-35, 802 P.2d 641, 643-44 (1990) (affirming summary judgment in favor of employer where employee had no bargained-for expectations and employee handbook did nothing to alter at-will relationship).

**{19}** The district court found, based upon numerous undisputed facts, that Zarr was an at-will employee for NCI. Zarr argues the district court overlooked issues of material fact in making its finding. Specifically, Zarr contends that although she was informed at the time she applied for the position and at hiring that her employment was terminable at-will at any time by either party, although she signed receipts for an employee handbook and a policies and procedures manual acknowledging that her employment was terminable at-will at any time, and although no provisions were to be construed as an employment contract, NCI's practices nevertheless altered the relationship so she could only be fired with good cause after progressive discipline.

> In examining implied employment contract cases, we always have required that the *promise* that is claimed to have altered the presumed at-will term *be sufficiently explicit* to give rise to reasonable expectations of termination for good cause only. . . . An employer creates expectations by establishing policies or making promises. An implied contract is created only where an employer creates a reasonable expectation. The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon.

*Hartbarger*, 115 N.M. at 672, 857 P.2d at 783 (citations omitted). Zarr does not claim anyone told her at any time during her employment that her position was not terminable at-will. Zarr also does not assert NCI was at any time displeased with her work performance in a way that would have required progressive discipline. In fact both parties agree Zarr was relieved of her employment duties solely because of WTS's request.

6

**{20}**  Zarr's belief that she had an implied employment contract stems from two occasions when she was required, as a supervisor, to administer discipline to subordinates.  In doing so, she consulted human resources personnel who instructed her to take steps short of terminating the employment of her subordinates (in one case by verbally disciplining and placing a report in the file of an employee who insulted another; and in one case by moving an employee complaining of discrimination to another department).  Zarr argues that through these interactions with human resources, and because she was given management training in how to administer progressive discipline, NCI established an implied employment contract that negated NCI's express statements that her employment was terminable at any time by either party.  Zarr testified that although she was aware that NCI's policies and procedures provided for immediate termination she had concluded that termination could occur for good cause only.

**{21}**  Defendants do not dispute Zarr's assertions that she disciplined subordinates.  Rather, they argue NCI never provided an explicit promise that would alter the at-will relationship or give rise to a reasonable expectation that her employment could not be terminated at any time.  Defendants also argue that Zarr admitted NCI expressly informed her that her employment was at-will, and no one ever told her anything to the contrary.  Zarr does not cite to any specific provisions of NCI's policies and procedures that restrict NCI's ability to terminate employment at any time.

**{22}**  Based upon the uncontested evidence that Zarr was an at-will employee, even viewing all evidence in the light most favorable to Zarr, we cannot say that two instances where employees were disciplined instead of terminated give rise to an implied employment contract that limited NCI's authority to discharge Zarr.  We adhere to our Supreme Court's statement in *Hartbarger*:  "As a matter of policy, this Court will not consider evidence that a company does not usually fire employees without a good reason as *by itself* establishing that the company does not maintain an at-will employment policy."  *Id.* at 674, 857 P.2d at 785.  An employer's practice of normally firing employees only for good cause is not evidence that the employer does not maintain an at-will employment policy.  *Id.*  As Zarr has not met her burden of raising a material issue of fact, we affirm the district court's holding that Zarr's employment was at-will, terminable at any time by either party.

**{23}**  Accordingly, we hold the sole-motive test was the proper test to apply to Zarr's claim of intentional interference with a prospective contract.  Therefore, we must establish whether a material issue of fact existed as to whether Defendants acted with sole motive to harm Zarr.

## C.    NO MATERIAL ISSUE OF FACT ON SOLE MOTIVE

**{24}**  Zarr argues that the district court overlooked a genuine issue of material fact that Defendants acted with the sole motive to harm her.  Zarr argues that Defendants' statements that they requested her removal from the project for legitimate business reasons were entirely pretextual, and the reasons Defendants asked NCI to remove her were improper.

**{25}** New Mexico courts have adopted a view that where a defendant is accused of interfering with a plaintiff's opportunity to enter into prospective contracts, a strong showing must be made that the defendant acted not for legitimate business reasons but from some motive such as personal vengeance or spite. *Anderson*, 97 N.M. at 158, 637 P.2d at 840. If the accused can show a legitimate business reason for the action, even if there also may have been a motive to harm the plaintiff, no material issue of fact exists. *See Kelly*, 102 N.M. at 207, 692 P.2d at 1356 ("Because the record is replete with evidence that [the defendant] had legitimate business purposes for adopting the requirement, even if [the defendant] additionally had a motive to harm [the] plaintiffs, there is no material issue of fact. Summary judgment was proper."); *see also Clough v. Adventist Health Sys., Inc.*, 108 N.M. 801, 806, 780 P.2d 627, 632 (1989) ("[E]ven if [the plaintiff] had produced evidence of improper motives, [because] legitimate health care and financial reasons existed for suspending [the plaintiff's] privileges[,] we conclude that no material issue of fact exists to support [the plaintiff's] claim of tortious interference.").

**{26}** Defendants contend they requested Zarr's removal from the WTS project because of ongoing problems with the budget forecast and because Zarr did not follow procedure when she took her concerns about an expenditure directly to DOE instead of going through WTS. Zarr argues that Defendants' stated reasons for firing her were entirely pretextual. In support of her position, Zarr points to the timing of her release from employment, her lack of any disciplinary record regarding the budget issues, and the fact that another employee involved in budgeting was retained and given additional responsibilities.

**{27}** The timing of Zarr's release from employment supports both her own argument and Defendants' argument that she was released because in going to DOE with her concerns, she chose a different chain of command at WTS than was acceptable to Haug, which Zarr herself apparently acknowledges in her deposition testimony. Further, the record shows WTS had previously expressed concerns about Zarr resolving issues directly with DOE instead of going through WTS. Although Zarr did not have a record of discipline with regard to the budget forecast issues, all parties agree NCI's estimates were over budget due to labor costs, the estimates fluctuated from month to month, and confusion existed about which party was responsible for various expenditures. That one of Zarr's subordinates was retained and given additional responsibilities, although he too worked on the budget, is not a convincing argument that Zarr's dismissal was due to an improper motive because Zarr was the person ultimately responsible for providing budget forecasts.

**{28}** WTS or Haug may have had improper motives in requesting Zarr's removal, but the record also shows substantial evidence of legitimate business reasons for the request. *See Silverman*, 1998-NMCA-107, ¶ 30 (holding that summary judgment against the plaintiff was proper when the defendants acted at least in part for legitimate business purposes). Zarr alleges WTS's reasons were pretextual but both parties generally agree on the events which took place prior to Zarr's removal from NCI. Zarr's allegations raise some factual issues, but it is not enough that there are some factual issues because the factual issues must be material; immaterial facts create no triable issue. *See Oschwald v. Christie*, 95 N.M. 251,

253, 620 P.2d 1276, 1278 (1980). As discussed above, because Defendants' motive must have been solely to harm Zarr, and the record shows Defendants acted at least in part for legitimate business reasons, no material issue of fact exists. The district court did not err in granting summary judgment in favor of Defendants.

**CONCLUSION**

**{29}** We reverse the district court's holding with regard to the improper-means ground for intentional interference with contractual relations, affirm the district court's finding of summary judgment in favor of Defendants based upon the improper-motive standard, and remand to the district court with instructions to apply the appropriate standard to the question of whether Defendants acted with improper means.

**{30}   IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**JONATHAN B. SUTIN, Judge**

**Topic Index for _Zarr v. Washington Tru Solutions, LLC_, No. 27,553**

| **CN** | **CONTRACTS** |
| CN-IF | Interference with Contract |

| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |