This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36828**

**JESSICA AGUILAR,**

Plaintiff-Appellant,

v.

**ROOSEVELT COUNTY BOARD OF COUNTY COMMISSIONERS, and JANE DOES I AND II, in Their Official Capacities as Detention Officers,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Donna J. Mowrer, District Judge**

Gary C. Mitchell, P.C.
Gary C. Mitchell
Ruidoso, NM

Eric D. Dixon
Portales, NM

for Appellant

Eaton Law Office, P.C.
James P. Barrett
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**ATTREP, Judge.**

**{1}**     Plaintiff Jessica Aguilar (Jessica) appeals the dismissal of her lawsuit against Defendant Roosevelt County Board of County Commissioners (the County) on the basis of res judicata or claim preclusion. Her attorney, Eric Dixon, also challenges the imposition of Rule 1-011 NMRA sanctions against him.[1] We hold that the district court erred in applying res judicata principles to dismiss Jessica's case, and we therefore reverse the grant of summary judgment in the County's favor. Because that determination necessarily impacts the sanctions against Mr. Dixon, we likewise reverse those sanctions.

## BACKGROUND

**{2}**     Before commencing the lawsuit underlying this appeal, Mr. Dixon filed a lawsuit in federal court on behalf of ten inmates at the Roosevelt County Detention Center (RCDC). That lawsuit arose out of an alleged incident occurring on September 26, 2013, in which a male detention officer fired a number of "pepper balls" into a day room at RCDC. All the plaintiffs in the federal court case were male inmates at RCDC, with the possible exception of a plaintiff named "Jessie Aguilar." Mr. Dixon later moved to amend the complaint. In relevant part, the proposed amended complaint alleged five separate incidents, occurring between August 21, 2013, and May 22, 2014, involving pepper balls or spray, with none occurring on September 26, 2013, the date alleged in the original complaint. As for the incident occurring on August 21, 2013, the proposed amended complaint alleged that "[a]ll [p]laintiffs were . . . required to submit to humiliating strip searches" after a male detention officer fired pepper balls into a day room at RCDC. In the course of the federal court proceedings, Jessica answered interrogatories on behalf of Jessie Aguilar. In those interrogatories, Jessica swore under oath that she was a plaintiff in the federal case and that she had suffered "injury to eyes from the pepper ball spray[.]" Mr. Dixon eventually filed a stipulation of dismissal, pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, in which the parties stipulated to dismissing with prejudice "all claims . . . that were brought or could have been brought by Jessie Aguilar." The federal district court did not rule on the motion to amend the complaint before Mr. Dixon filed the Rule 41 stipulated dismissal.

**{3}**     Ten days after dismissing Jessie Aguilar's complaint in federal court, Mr. Dixon filed the state lawsuit that is the subject of this appeal. In this lawsuit, Jessica alleged that on September 26, 2013, two unnamed female detention officers (identified as Jane Does I and II) took her to a local healthcare facility where she was subjected to a "humiliating search of her pelvic area" in the presence of the two guards. Although the guards apparently suspected that Jessica had concealed contraband on her person, no contraband was found during the body cavity search. The County moved for summary judgment, asserting that principles of res judicata mandated dismissal of Jessica's complaint. The summary judgment motion, as expanded upon in the reply in support of

---

[1]Although the notice of appeal was filed in Jessica's name, we nevertheless treat the appeal of the sanction order as if Mr. Dixon had filed the appeal in his name as well. *See Mitchell v. Doña Ana Sav. & Loan Ass'n, F.A.*, 1991-NMSC-007, ¶ 7, 111 N.M. 257, 804 P.2d 1076 (holding that, notwithstanding the attorney's appeal of a sanction order in his client's name, this Court had jurisdiction to hear the merits of the appeal).

the motion, was premised on the following points: (1) Jessica and "Jessie Aguilar" are the same person; (2) Jessica's body cavity search claim was or could have been included in the federal case; (3) Jessica dismissed with prejudice "all claims that were brought or could have been brought" in the federal case; and (4) a dismissal with prejudice, voluntary or otherwise, has res judicata effect in future cases. Jessica responded with two main arguments: first, that she was not the same person as "Jessie Aguilar" in the federal case; and second, that the ultimate facts necessary for a resolution of the state court action were different from those alleged in the federal court action.

**{4}** The district court granted the motion for summary judgment. Jessica then moved for reconsideration, contending that genuine issues of material fact existed as to the identity of Jessie Aguilar and Jessica. The district court denied Jessica's motion to reconsider. The district court, on the County's motion, also imposed Rule 1-011 sanctions against Mr. Dixon, awarding the County attorney fees. This appeal followed.[2]

## DISCUSSION

### I.   Summary Judgment Based on Res Judicata

**{5}** Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Rule 1-056(C) NMRA. The burden is first on the moving party to make a prima facie showing of entitlement to summary judgment. *Bartlett v. Mirabal*, 2000-NMCA-036, ¶ 17, 128 N.M. 830, 999 P.2d 1062. Only upon such a showing does the burden shift to the opposing party "to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Roth v. Thompson*, 1992-NMSC-011, ¶ 17, 113 N.M. 331, 825 P.2d 1241. On appeal, we "review the whole record in the light most favorable to the party opposing summary judgment to determine if there is any evidence that places a genuine issue of material fact in dispute." *City of Albuquerque v. BPLW Architects & Eng'rs, Inc.*, 2009-NMCA-081, ¶ 7, 146 N.M. 717, 213 P.3d 1146. Our review of the district court's grant of summary judgment is de novo. *See Zarr v. Washington Tru Solutions, LLC*, 2009-NMCA-050, ¶ 9, 146 N.M. 274, 208 P.3d 919. Similarly, whether a district court properly determined that the moving party satisfied the elements of res judicata is an issue of law reviewed de novo. *Potter v. Pierce*, 2015-NMSC-002, ¶ 8, 342 P.3d 54.

**{6}** Because the dismissal given res judicata effect by the district court in this case came from a federal court, we apply federal res judicata principles. *See Moffat v.*

---

[2]Disciplinary proceedings against Mr. Dixon also followed. *See In re Dixon*, 2019-NMSC-006, 435 P.3d 80. Our Supreme Court determined that Mr. Dixon violated numerous Rules of Professional Conduct by making various false statements to the district court and Disciplinary Counsel related to his representation of Jessica in this lawsuit. *Id.* ¶ 1. We observe that appellate briefing in this case occurred after the publication of the disciplinary opinion concerning Mr. Dixon. Neither party, however, contends this Court is bound by the factual or legal determinations of our Supreme Court set forth in that opinion. Furthermore, the Court cautioned that its "discussion and analysis of the facts set forth in this opinion are based on the findings and conclusions of the [Disciplinary] Board and are not intended to influence the outcome of the appeal." *Id.* ¶ 5 n.1.

*Branch*, 2005-NMCA-103, ¶ 11, 138 N.M. 224, 118 P.3d 732 ("Because the prior action was in federal court, federal law determines the preclusive effect of a federal judgment."). That said, New Mexico and federal law in this area are congruent. *Id.* We therefore rely primarily on New Mexico law in this opinion for convenience. *See id.*

**{7}**     Res judicata, also known as claim preclusion, "is a judicially created doctrine designed to promote efficiency and finality by giving a litigant only one full and fair opportunity to litigate a claim and by precluding any later claim that could have, and should have, been brought as part of the earlier proceeding." *Potter*, 2015-NMSC-002, ¶ 1. The party asserting res judicata has the burden of establishing that "(1) there was a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits." *Id.* ¶ 10. Whether the causes of action are the same for purposes of res judicata depends not on the legal theories relied on in each lawsuit but on an examination of the underlying facts. *See Pielhau v. State Farm Mut. Auto. Ins. Co.*, 2013-NMCA-112, ¶ 14, 314 P.3d 698 ("[W]e focus on the underlying facts rather than the legal theories relied on in the first action."). Res judicata thus will bar not only claims actually asserted in the original case, but also claims that could have been asserted in that case, so long as all of the claims arise out of the "same transaction." *See Brooks Trucking Co. v. Bull Rogers, Inc.*, 2006-NMCA-025, ¶ 10, 139 N.M. 99, 128 P.3d 1076 ("[T]hat a claim could have been asserted in the first lawsuit does not require invocation of res judicata where the two lawsuits do not arise out of the same transaction."); *Anaya v. City of Albuquerque*, 1996-NMCA-092, ¶ 18, 122 N.M. 326, 924 P.2d 735 (clarifying it is insufficient for purposes of res judicata that claims merely "could have been asserted" but instead requiring that claims also arise from the same transaction to be subject to preclusion (internal quotation marks and citation omitted)).

**{8}**     To determine whether claims "arise out of the same transaction, or series of connected transactions[,]" *Chaara v. Lander*, 2002-NMCA-053, ¶ 15, 132 N.M. 175, 45 P.3d 895 (internal quotation marks and citation omitted), our courts apply the "transactional test" contained in the Restatement (Second) of Judgments Sections 24 and 25 (1982). *Anaya*, 1996-NMCA-092, ¶¶ 7-8. This approach requires an examination of "the operative facts underlying the claims made in the two lawsuits." *Id.* ¶ 8. Courts thus consider "(1) the relatedness of the facts in time, space, origin, or motivation; (2) whether, taken together, the facts form a convenient unit for trial purposes; and (3) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." *Id.* ¶ 12. Ultimately, the overarching question is whether the facts giving rise to each lawsuit "are so interwoven as to constitute a single claim for purposes of res judicata[,]" in light of the different rationales for the application of the doctrine: "to protect individuals from the burden of litigating multiple lawsuits; to promote judicial economy; and to promote the policy favoring reliance on final judgments by minimizing the possibility of inconsistent decisions." *Id.* ¶ 11 (alterations, internal quotation marks, and citation omitted).

**{9}**     The parties on appeal do not dispute the first two elements of res judicata—i.e., that there was a final judgment on the merits in an earlier action. *See Kirby v. Guardian*

*Life Ins. Co. of Am.*, 2010-NMSC-014, ¶ 66, 148 N.M. 106, 231 P.3d 87 (holding that "[a] dismissal with prejudice is an adjudication on the merits . . . to the extent that [it] . . . bar[s] a subsequent suit against the same defendant by the same plaintiff based on the same transaction"). Although the parties fervently dispute the third element—i.e., whether the undisputed facts show that Jessica and "Jessie Aguilar" are the same person,[3] we find it unnecessary to resolve this question because we conclude that the County's motion for summary judgment fails under the fourth res judicata element—i.e., identity of the causes of action. For purposes of this opinion, we therefore assume, but do not decide, that the undisputed material facts establish that Jessica and "Jessie Aguilar" are one and the same.[4]

**{10}**  As for whether the causes of action are the same in both lawsuits, the County, both below and now on appeal, largely avoids an examination of the operative facts underlying the claims. Instead, the County essentially makes two arguments in this regard: first, that Jessica's claim based on a body cavity search *was* brought in the federal lawsuit as part of the proposed amended complaint; and second, that, even if Jessica did not actually bring her body cavity search claim in the federal lawsuit, she *could have* brought it. Either way, the County contends, the Rule 41 stipulated dismissal precludes her claim in state court because it dismissed with prejudice all claims that were brought or could have been brought in federal court. We take each of the County's contentions in turn and explain why neither supports a determination that Jessica's body cavity search claim is barred on res judicata grounds.

## A.  The Proposed Amended Complaint in the Federal Court Action Has No Res Judicata Effect

**{11}**  Relying on the proposed amended complaint in the federal court action, the County asserts it is undisputed "that the federal court action proposed the inclusion of claims for humiliating searches." This, the County contends, means "[i]t can reasonably be inferred" that Jessica's body cavity search claim was included in the federal court action. But the federal district court never ruled on the proposed amended complaint before the filing of the stipulated dismissal. And the County directs us to no authority holding that a claim included in a proposed amended complaint should be given preclusive effect when the underlying motion to amend was never ruled on in the first instance. We therefore "assume no such authority exists." *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482; *see also Guest v. Berardinelli*, 2008-NMCA-144,

---

[3] The parties also dispute whether there is identity of the defendants. Although both lawsuits named the County, Jessica points out that her state lawsuit names two Jane Doe defendants, whereas the federal lawsuit named a male detention officer. The County contends that it is enough that Jessica and the County are involved in both suits. Given our determination that the County's assertion of res judicata fails on other grounds, we need not decide whether the naming of the Jane Doe defendants in the state lawsuit would defeat the County's claim of res judicata.

[4] Much of the evidence discussed by the parties, as set out in Jessica's response to the motion for summary judgment and the County's reply in support of the motion, relates to whether Jessica was a plaintiff in the federal lawsuit and, as such, is simply not pertinent to our analysis. What then is left for our consideration are the pleadings from this lawsuit and the federal lawsuit and the Rule 41 stipulated dismissal.

¶ 29, 145 N.M. 186, 195 P.3d 353 ("Where a party does not cite to authority in support of a proposition of law, we decline to do the research on the party's behalf."). We nevertheless think it self-evident that, because the federal court never ruled on the motion to amend, it cannot be said that the "humiliating strip searches" referenced in the proposed amended complaint, or Jessica's body cavity search, which the County contends was part and parcel of the humiliating strip searches, were ever made part of the federal lawsuit for purposes of res judicata. *See* 6 Arthur R. Miller et al., *Federal Practice & Procedure* § 1484 (3d ed. 2020) ("In general, if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect[.]"). But regardless, even if we were to assume that the federal lawsuit included a claim for "humiliating strip searches," as discussed below, *see infra* note 6, there are genuine issues of material fact in dispute as to whether the strip searches in that lawsuit arose out of the same core set of facts alleged by Jessica in her state lawsuit such that res judicata should apply.

{12}    Therefore, to the extent its ruling was based on the contention that Jessica's body cavity search claim was actually included in the federal court action, we hold the district court erred in granting summary judgment in favor of the County.

## B.    The Stipulated Dismissal Does Not Operate to Bar Jessica's Body Cavity Search Claim on Res Judicata Grounds

{13}    The County's primary argument below and on appeal is grounded in the following syllogistic reasoning: Jessica could have brought her body cavity search claim in federal court; Jessica dismissed with prejudice all claims that she could have brought in federal court; Jessica, therefore, dismissed with prejudice her body cavity search claim in federal court, and she is barred from bringing it in state court on res judicata grounds. The County's deceptively simple reasoning, however, does not withstand scrutiny.

{14}    For its contention that Jessica could have asserted her body cavity search claim in the federal court action, the County relies on Rule 18(a) of the Federal Rules of Civil Procedure. That rule provides, "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). But the fact that Jessica could have joined her body cavity search claim in the federal lawsuit does not mean that, for res judicata purposes, she was required to do so. A claim will not be precluded on res judicata grounds simply because it could have been permissively joined in the first action. *See* Restatement (Second) of Judgments § 24 cmt. h ("[A] plaintiff . . . may join [multiple claims] if he wishes, but he is not obliged to do so out of fear that he will lose any claims that he omits to join. Joinder of multiple claims is permissive, not compulsory." (citing Fed. R. Civ. P. 18(a))); *cf. Deflon v. Sawyers*, 2006-NMSC-025, ¶¶ 11-12, 139 N.M. 637, 137 P.3d 577 (holding that the plaintiff's claims in state court were not barred by res judicata, where she could have requested the federal court in the prior case to hear those claims under that court's supplemental jurisdiction but was not required to do so). Rather, as noted, res judicata will bar a claim that could have been brought in the first action *only if* that claim arose out of the same transaction resolved in the first lawsuit. *See Brooks Trucking*, 2006-

NMCA-025, ¶ 10; *Anaya*, 1996-NMCA-092, ¶ 18. Thus, for res judicata purposes, the operative inquiry is not whether Jessica could have filed her body cavity search claim in the federal lawsuit under Rule 18(a)'s permissive joinder provision. Instead, it is whether her body cavity search claim is part of the same transaction as the events alleged in the federal lawsuit.

**{15}** The County, however, appears to maintain that the transactional question is irrelevant because the stipulated dismissal in federal court provided that Jessica was dismissing with prejudice all claims that "could have been brought" by her in the federal court action. But the County's reliance on this language in the stipulated dismissal is misplaced. This Court has determined that such language "does no more than describe explicitly the *normal* preclusive effect of any judgment entered after litigation." *Khalsa v. Puri*, 2015-NMCA-027, ¶ 67, 344 P.3d 1036 (emphasis added); *see id.* ¶¶ 66-67 (describing the effect of the dismissal language, reading, "all claims which have been or could have been brought by [the party] in this case"). And, as explained, res judicata will preclude a claim that "could have been brought" in a prior lawsuit *only if* it was part of the same transaction resolved in that lawsuit. *See, e.g.*, *Brooks Trucking*, 2006-NMCA-025, ¶ 10; *Anaya*, 1996-NMCA-092, ¶ 18. Holding otherwise would raise problematic jurisdictional questions about whether a stipulated dismissal of a lawsuit could act to "dismiss" claims that a party had no obligation to bring in the first instance. *See Khalsa*, 2015-NMCA-027, ¶¶ 66-67. Based on the foregoing, we conclude that the stipulated dismissal did not operate to preclude Jessica from later asserting a claim she could have joined, but was not required to join, in the federal court action. Rather, the stipulated dismissal operates to bar Jessica's state court claim only if it was part of the same transaction as the federal claim under principles of res judicata. Thus, we must examine the claims using the transactional approach.

## C.  Genuine Issues Exist as to Whether the Body Cavity Search Claim Arose From the Same Transaction as the Claim Litigated in Federal Court

**{16}** In undertaking the transactional approach, we compare the allegations in the complaint actually filed in the federal court action with the allegations in this state court action. To determine whether the claims are the same for purposes of res judicata, as noted, "we consider the relatedness of the facts, trial convenience, and the parties' expectations." *Pielhau*, 2013-NMCA-112, ¶ 14 (internal quotation marks and citation omitted).

**{17}** First, scant evidence of the relatedness of the facts between the two lawsuits appears in the limited record before us. From this, it is difficult to ascertain what, if any, connection there is between the pepper ball incident at issue in the federal lawsuit and the body cavity search at issue in this case. And contrary to the gloss offered by the County, we see meaningful differences in the record before us between the two claims.[5]

---

5In its analysis, the County pulls allegations from both the proposed amended complaint and the filed complaint in the federal lawsuit. We already have determined that the proposed amended complaint has no res judicata effect in this case. Nevertheless, as discussed below, *see infra* note 6, factual distinctions persist even if we examine the proposed amended complaint.

While the incidents are both alleged to have occurred on the same date—September 26, 2013—the specific temporal proximity of these events and whether they were otherwise related or part of successive or simultaneous acts by the County are simply unknown from the record. Nonetheless, the harms alleged are different—physical injuries caused by pepper balls, versus battery and invasion of privacy caused by an unconsented body cavity search. The individual actors giving rise to these harms also are different—a male officer involved in the pepper ball incident, versus two female officers involved in the body cavity search. The actors had different motives—use of the pepper balls served only to punish the inmates, whereas the body cavity search was undertaken in an attempt to find contraband. And the alleged incidents occurred at different locations—the pepper ball incident occurred in a day room at RCDC, whereas the body cavity search occurred at an offsite healthcare facility. Given these differences, we conclude there is a genuine issue of material fact in dispute as to the relatedness of facts between the body cavity search claim alleged in this case and the pepper ball claim alleged in the federal court complaint.[6] *See* Restatement (Second) of Judgments § 24 cmt. d ("When a defendant is accused of *successive but nearly simultaneous* acts, or acts which though occurring over a period of time were *substantially of the same sort* and *similarly motivated*, fairness to the defendant as well as the public convenience may require that they be dealt with in the same action." (emphases added)); *see generally Brooks Trucking*, 2006-NMCA-025, ¶ 17 (noting, as a basis for rejecting the application of res judicata, that the facts necessary for the resolution of the two lawsuits were different, and the factual and legal issues presented in the first lawsuit were significantly different from those in the second lawsuit); *Anaya*, 1996-NMCA-092, ¶ 13 (holding that res judicata would not bar a claim where "the significant operative facts differ with respect to substance, time, and [the d]efendants' motivation").

**{18}**   Second, these differences also militate in favor of a determination that the factual allegations presented by the two lawsuits would not form a convenient trial unit. From the limited record before us, other than the presence of Jessica as a plaintiff and the County as a defendant in both cases, there appears to be little material relationship between the two lawsuits. The witnesses and the evidence in the two suits likely will vary significantly—a male detention officer and male inmates would testify about the pepper ball incident, whereas two female detention officers and a nurse would testify about the body cavity search. Without any seeming connection between the claims, a jury considering a trial involving both claims would essentially be hearing two distinct lawsuits, with all the resulting possibilities for confusion and prejudice that might arise. *See Anaya*, 1996-NMCA-092, ¶ 15 (stating that claims in two lawsuits would not form a

---

6We note that even if we were to examine the facts alleged in the proposed amended complaint in federal court, we would reach the same conclusion. Comparing the allegations in the federal proposed amended complaint with the allegations in the state lawsuit, we still see meaningful differences between the causes of action. The "humiliating strip searches" in the federal lawsuit and the "humiliating search of [Jessica's] pelvic area" in the state lawsuit are alleged to have occurred on different dates (August 21, 2013, and September 26, 2013, respectively), in different locations (a day room at RCDC and a local health care facility, respectively), involving disparate types of searches (strip search and full pelvic examination, respectively), by different actors (a male detention officer and Jane Doe defendants, respectively), who had different motivations ("shak[ing] down" a day room at RCDC and a search for contraband on one person).

convenient trial unit when the "claims . . . involve[d] allegations of conduct by different persons in dissimilar situations and at distinct times").

**{19}** Finally, given the absence of the claims' factual relatedness and indicators of trial convenience in the record, we think it unreasonable for the County to expect that resolution of the federal lawsuit would preclude Jessica's body cavity search claim in state court. *Compare Brooks Trucking*, 2006-NMCA-025, ¶ 17 (holding that the treatment of different facts as a single unit for purposes of res judicata did not conform to a reasonable expectation of the parties), *with Pielhau*, 2013-NMCA-112, ¶ 18 ("Given that we have determined that the underlying facts of the two suits overlap substantially, we conclude it would be reasonable for [the defendant] to expect that resolution of the first suit would preclude any further claims arising from the . . . accident [underlying both suits].").

**{20}** Based on the record before us, we conclude that there exists a genuine issue of material fact in dispute as to whether Jessica's body cavity search claim arose out of the same transaction as the pepper ball claim in the federal lawsuit. Given this, we hold that the district court erred in granting summary judgment in the County's favor on res judicata grounds. *See Pielhau*, 2013-NMCA-112, ¶ 14 (discussing how a claim must arise from the same transaction before it may be precluded by res judicata). We of course pass no judgment on whether, after further factual development on remand, res judicata might successfully be asserted by the County.

## II.    Rule 1-011 Sanctions

**{21}** After the district court's grant of summary judgment, the County moved for Rule 1-011 sanctions against Mr. Dixon "for prosecuting a frivolous lawsuit when [Jessica's] counsel knew that all claims [Jessica] had against the County and its employees related to her 2013 incarceration in [RCDC] had previously been dismissed with prejudice." The underlying basis for the sanctions motion was the same as that for the summary judgment motion—that the Rule 41 stipulated dismissal barred all of Jessica's claims on res judicata grounds. The district court granted the Rule 1-011 sanctions motion and ordered Mr. Dixon to pay the County's attorney fees. Having concluded that the district court erred in granting summary judgment on res judicata grounds, the same grounds underlying the motion for sanctions, we also reverse the sanction order. *See Rangel v. Save Mart, Inc.*, 2006-NMCA-120, ¶ 12, 140 N.M. 395, 142 P.3d 983 (noting that a district court's imposition of Rule 1-011 sanctions is reviewed for an abuse of discretion and that a district court abuses its discretion if its sanction order is based on an erroneous view of the law).

## CONCLUSION

**{22}** For the foregoing reasons, we reverse the district court's grant of summary judgment in favor of the County, as well as the sanctions imposed on Mr. Dixon. We remand with instructions to reinstate Jessica's lawsuit against the County and for further proceedings consistent with this opinion.

**{23}** IT IS SO ORDERED.

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**KRISTINA BOGARDUS, Judge**